## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o UNITED STATES DEPARTMENT<br>OF JUSTICE, MONEY LAUNDERING<br>AND ASSET RECOVERY SECTION,<br>1400 NEW YORK AVENUE, N.W.,<br>WASHINGTON, D.C. 20005<br><br>Plaintiff,<br><br>v.<br><br>THREE SUMS TOTALING $612,168.23<br>IN SEIZED UNITED STATES CURRENCY<br><br>Defendants *in rem.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 19-CV-_____<br>)<br>)<br>)<br>)<br>) |

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by and through its undersigned attorneys, brings this Verified Complaint in a civil action *in rem* to condemn and forfeit the above-listed defendant property to the use and benefit of the United States of America in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. In support of its cause, Plaintiff states and alleges as follows:

### NATURE OF THE ACTION

1.     This is a civil forfeiture action against United States currency involved in and traceable to violations of the International Emergency Economic Powers Act of 1977 (hereafter, "IEEPA"), 50 U.S.C. §§ 1701-1706, as well as the Money Laundering Control Act of 1986, 18 U.S.C. §§ 1956(a)(2)(A) and 1956(h). Violating IEEPA is a specified unlawful activity for

money laundering charges pursuant to 18 U.S.C. 1956(c)(7)(D).  These funds are subject to

forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), (C), and 984.

## JURISDICTION AND VENUE

2.       This Court has jurisdiction over an action commenced by the United States

pursuant to 28 U.S.C. § 1345 and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

3.       Venue for this action is proper in this district pursuant to 28 U.S.C.

§ 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## DEFENDANTS *IN REM*

4.       The defendants *in rem* consist of the following (collectively referred to hereafter

as the "Subject Funds"):

      a.  the sum of $229,203.38 in United States currency, plus accrued interest,

           formerly located at Citibank N.A., seized on or about August 14, 2017, and

           assigned an asset identification number ending in 5264 by the U.S.

           Department of Justice, (hereafter, "SUM A");

      b.  the sum of $22,964.85 in United States currency, plus accrued interest,

           formerly located at Societe Generale (New York), seized on or about

           November 20, 2017, and assigned an asset identification number ending in

           6594 by the U.S. Department of Justice (hereafter, "SUM B").

      c.  the sum of $360,000.00 in United States currency, plus accrued interest,

           formerly located at Citibank N.A., seized on or about November 20, 2017, and

           assigned an asset identification number ending in 7468 by the U.S.

           Department of Justice (hereafter, "SUM C").

5.      Pursuant to a seizure warrant issued by this Court, the defendants *in rem* were seized in the Southern District of New York and then transferred to the possession and custody of the United States Marshals Service, specifically, the United States Marshal Division for the District of Columbia, where they remain.  In light of these seizures, the United States requests the issuance of an arrest warrant *in rem* signed by the Clerk of Court for each defendant *in rem*. See Supplemental Rule G(3)(b)(i).

## BACKGROUND

6.      At the time of seizure, SUM A consisted of an attempted wire transfer of funds between a Double Gamma (Ghana) Limited (hereafter, "Double Gamma") account ending in 0306 at GCB Bank in Ghana, and an AJC Trading FZC (herafter, "AJC") account ending in 3702 at Emirates Islamic Bank in the United Arab Emirates.

7.      At the time of seizure, SUM B consisted of an attempted wire transfer of funds between an SRG Industries (Ghana) Ltd. (hereafter, "SRG") account ending in 6230 at Standard Trust Bank in Ghana, and an Societe Pour Le Compoundage en Cote D'Ivoire (hereafter, "SCCI") account ending in 5992 at Societe Generale in Ivory Coast.

8.      At the time of seizure, SUM C consisted of an attempted wire transfer of funds between a Ramani Distribution Company, Ltd. (hereafter, "Ramani") account ending in 4881 at Access Bank GH Ltd in Ghana, and a Kien Giang Import and Export (hereafter, "Kien") account ending in 4013 at Joint Stock Commercial Bank for Development and Investment in Vietnam.

9.      On or about October 9, 2017, administrative forfeiture proceedings were commenced against the Subject Funds.

10.     On or about October 23, 2018, Solicitor Colin Russell of Ankamah Russell Law, 118 Piccadilly, Mayfair, London W1J7NW United Kingdom, *inter alia*, filed a claim for SUM A

on behalf of Hussein Jaber and Double Gamma, for SUM B on behalf of Hussein Jaber and

SRG, as well as for SUM C on behalf of Hussein Jaber and Ramani.

    11.     As part of the claim, Hussein Jaber signed and dated "16th October 2018"

underneath the following statements, entitled "Sworn Notice of Representation":

"I have retained the above-named attorney to represent me in this matter. I have reviewed the

foregoing claim and found that its contents are accurate to the best of my information and belief.

I declare under penalty of perjury that the foregoing information is true and correct."

    12.     The claim is also signed by Solicitor Russell above the statement: "WITH THE

FULL AUTHORITY FROM SRG INDUSTRIES (GHANA) LTD…"

    13.     Attached to the claim are purported invoices, shipping records, and other

documentation of sales transactions between Double Gamma (Ghana) Ltd of Comm. 9, Behind

Winners Chapel, Tema, Ghana, as well as AJC Trading Co Ltd. of Q1-05-143/A, P.O. Box 9146,

Sharjah, United Arab Emirates.

    14.     Also attached to the claim is a purported payment request on Double Gamma

letterhead to "GCB BANK TEMA BRANCH", signed "Ali Jaber (Director)", asking the bank

manager to transfer SUM A from Double Gamma's account to AJC Trading FZC's account

ending in 3702 at Emirates Islamic Bank in Riqa, United Arab Emirates.

    15.     The claim also includes invoices, shipping records, and other documentation of a

purported transaction between SCCI and SRG regarding SUM B.

    16.     Regarding SUM C, the claim includes invoices, shipping records, and other

documentation of a purported transaction between Ramani and Kien. One document is a funds

transfer request on Ramani letterhead, signed "Hussein Jaber", requesting Access Bank in Tema,

Ghana to wire $360,000.00 to Kien from Ramani's account ending in 4881.

## IEEPA SANCTIONS

17.     The United States Department of the Treasury, Office of Foreign Assets Control (hereafter, "OFAC"), which is located in the District of Columbia, administers and enforces economic and trade sanctions against certain foreign countries, entities, and individuals in accordance with IEEPA and associated regulations and orders, including Executive Order 13224 and the Global Terrorism Sanctions Regulations, Title 31, Code of Federal Regulations, Part 594 (hereafter, "GTSR").

18.     The penalties section of IEEPA, 50 U.S.C. § 1705, makes it "unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition" issued under IEEPA.

19.     Following the terrorist attacks of September 11, 2001, President George W. Bush issued Executive Order 13224 pursuant to IEEPA and other statutes, declaring a national emergency with respect to the threat to the national security, foreign policy, and economy of the United States posed by grave acts of terrorism and threats of terrorism committed by foreign terrorists. *See* 66 Fed. Reg. 49079 (Sept. 23, 2001).

20.     To implement Executive Order 13224, OFAC issued the GTSR, which immediately prohibited all U.S. persons and entities from engaging without a license in any transactions with, or for the benefit of, certain designated persons or entities, known as Specially Designated Global Terrorists (hereafter, "SDGTs"), and immediately blocked all assets of SDGTs. 31 C.F.R. Part 594. As a result, it is illegal for any U.S. person or entity to engage in any transaction not only with a designated SDGT, but also with any undesignated third-party entity or person acting on behalf of the designated SDGT without first obtaining a license from OFAC.

## SPECIFIC PERSONS AND ENTITIES DESIGNATED AS SDGTS

21.     On May 27, 2009, OFAC designated Kassim Tajideen as an SDGT pursuant to IEEPA and Executive Order 13224 based on his significant financial support of the Hizbollah terrorist organization. On December 9, 2010, OFAC designated his brother, Husayn Tajideen as an SDGT for the same reasons. At all times since their respective designation dates until today, both individuals have remained SDGTs.

22.     Also on December 9, 2010, OFAC designated, among others, the following six companies as SDGTs:  (1) TAJCO; (2) Congo Futur; (3) Grupo Arosfran Empreendimentos E Participacoes SARL (hereafter, "Arosfran"); (4) Afri Belg Commercio E Industrial LDA (hereafter, "Afri Belg"), (5) Golfrate Holdings (Angola) LDA (herafter, "Golfrate"); and (6) Ovlas Trading S.A., pursuant to IEEPA and Executive Order 13224. The companies were designated after being identified as being owned by, controlled by, or operated for the benefit of, the OFAC-designated Tajideen brothers. At all times since their designation date until today, all of these entities have remained SDGTs.

23.     At all times relevant to this Verified Complaint, TAJCO was a multinational company owned by and for the benefit of Kassim Tajideen, Husayn Tajideen, and others. TAJCO was composed of several subsidiary and sibling entities, including Tajco Company Limited in Banjul, Gambia. Husayn Tajideen managed the daily operations of the company in Gambia. Other family members and employees operated the company on behalf of Kassim Tajideen and Husayn Tajideen in Lebanon, Sierra Leone, and elsewhere.

24.     At all times relevant to this Verified Complaint, Congo Futur was an importer and distributer of goods based in Kinshasa, Democratic Republic of Congo (hereafter, "DRC"), and operated by Tajideen family members and employees operating on Tajideen's behalf in the DRC,

6

Lebanon, and elsewhere. Congo Futur was owned by and for the ultimate benefit of Kassim

Tajideen and others. Congo Futur was a subsidiary of Ovlas Trading SA and conducted business

from the address Boulevard Du 30 Juin No. 3642, Gombe, Kinshasa, DRC.

25.     At all times relevant to this Verified Complaint, Arosfran was an importer and

distributer of goods based in Luanda, Angola, and was operated by Kassim Tajideen, as well as

family members and company employees operating on Kassim Tajideen's behalf in Angola and

Lebanon. Arosfran was owned by and for the ultimate benefit of Tajideen and others. Arosfran

was a sister company to Afri Belg, as well as Golfrate Holdings LDA.

26.     Immediately after the designation of TAJCO as an SDGT in 2010, Husayn

Tajideen changed the name of the company in Gambia from Tajco Company Limited to Grand

Stores Limited.

27.     On April 19, 2012, OFAC amended its SDGT designation of TAJCO to include

Grand Stores as an alias of TAJCO in Gambia.

28.     Kassim Tajideen pleaded guilty in this Court to a criminal violation of 18 U.S.C.

§ 1956(h) on December 6, 2018, and admitted to conspiring to commit international money

laundering with the intent to promote the specific unlawful activity of violating IEEPA. He is

currently in U.S. government custody while awaiting sentencing. U.S. v. Tajideen, 17-CR-46,

Dkt. 223.

## PERSONS AND ENTITIES ACTING
## ON BEHALF OF AND/OR OWNED BY SDGTS

29.     AJC, Ramani, and SRG are entities owned by, controlled by, or operated for the

benefit of, Kassim Tajideen and Ovlas Trading SA. Its daily operations are managed by Ali

Jaber and Hussein Jaber.

30.     AJC is based in Tema, Ghana, as well as Dubai, United Arab Emirates.  Ramani
and SRG are based in Tema, Ghana.

31.     AJC, Ramani, and SRG are part of a portfolio of Ghana-based companies and
tradenames operated by Ali Jaber, Hussein Jaber, and others for the benefit of Kassim Tajideen
and Ovlas Trading SA, including but not limited to:

      a.  Amani Manufacturing Company Ltd
      b.  Lara Mart
      c.  Multi-Pac Company Ltd
      d.  Royal Bow Company Ltd
      e.  Sika Aba Ltd
      f.  Silver Platter (GH) Ltd
      g.  Taj Investments Ltd
      h.  TT International Ltd

32.     AJC, Ramani, and SRG share resources, finances, personnel, and other interests
with Ovlas Trading SA, and entities (a) through (h) listed in the preceding paragraph.

33.     As a result of the above, business conducted by AJC, Ramani, and SRG is
conducted on behalf of SDGT Ovlas Trading SA and SDGT Kassim Tajideen,

## THE INVOLVEMENT OF DEFENDANT FUNDS IN PROHIBITED FINANCIAL TRANSACTIONS

34.     Two of the types of financial transactions prohibited by IEEPA sanctions are: (1)
transactions by the SDGT (or an undesignated person or entity acting on their behalf) with a U.S.
person or company without an OFAC license; and (2) transactions in U.S. dollars by the SDGT
(or an undesignated person or entity acting on their behalf) with a non-U.S. person or company
that are cleared through correspondent accounts at a U.S.-based financial institution without an
OFAC license.

35.     Correspondent banking, also known as interbank services, is a line of business at
many large financial institutions whereby other banks are able to support international wire

transfers for their customers in a currency they normally do not hold on reserve.  Correspondent

banks in the United States facilitate these wire transfers by allowing these other banks, located

overseas, to maintain accounts at the correspondent bank in the United States.

36.     Correspondent banking in the United States is not exempt from the Bank Secrecy

Act or the Money Laundering Control Act.

37.     Citibank N.A. and Societe Generale (New York) are American financial

institutions headquartered in New York City.  Both provide correspondent banking in the United

States in support of U.S. dollar transactions, among others.

38.     SUM A and SUM C were seized from Citibank N.A. while involved in interbank

transfers that transited through the United States.

39.     SUM B was seized from Sociate Generale (New York) while involved in

interbank transfers that transited through the United States.

Transfer of SUM A

40.     On or about August 10, 2017, Double Gamma attempted to wire transfer SUM A

from its account ending in 0306 at Ghana Commercial Bank, Ltd., in Ghana to an AJC account at

the Emirates Islamic Bank in Dubai, United Arab Emirates.

41.     At no time relevant to this Verified Complaint did any related parties to the

transaction involving SUM A, including but not limited to Ghana Commercial Bank, Ltd.,

Emirates Islamic Bank, Citibank N.A., Ali Jaber, Hussein Jaber, AJC, or Double Gamma, have

the proper license from OFAC to conduct business for the benefit of Kassim Tajideen or Ovlas

Trading SA.

42.    In the normal course of the wire transaction, SUM A was transferred to Citibank N.A. in the United States, whereupon it was seized by U.S. law enforcement via a warrant issued in the District of Columbia.

43.    SUM A was subsequently transferred to the custody of the U.S. Marshal Service.

Transfer of SUM B

44.    On or about July 17, 2017, SRG attempted to wire transfer SUM B from its account ending in 6230 at Standard Trust Bank in Ghana to SCCI at Societe Generale de Banques en Cote d'Ivoire SA in the Ivory Coast.

45.    At no time relevant to this Verified Complaint did any related parties to the transaction involving SUM B, including but not limited to the Standard Trust Bank, Societe Generale (New York), Societe Generale de Banques en Cote d'Ivoire SA, Hussein Jaber, SCCI or SRG, have the proper license from OFAC to conduct business for the benefit of Kassim Tajideen or Ovlas Trading SA.

46.    In the normal course of the wire transaction, SUM B was transferred to Societe Generale (New York) in the United States, whereupon it was seized by U.S. law enforcement via a warrant issued in the District of Columbia.

47.    SUM B was subsequently transferred to the custody of the U.S. Marshal Service.

Transfer of SUM C

48.    On or about August 23, 2017, Ramani attempted to wire transfer SUM C from its account ending in 4881 at Access Bank Ltd. in Ghana to Kien at Joint Stock Commercial Bank for Investment and Development in Vietnam.

49.    At no time relevant to this Verified Complaint did any related parties to the transaction involving SUM C, including but not limited to the Joint Stock Commercial Bank for

Investment and Development, Citibank N.A., Hussein Jaber, Kien, or Ramani, have the proper

license from OFAC to conduct business for the benefit of Kassim Tajideen or Ovlas Trading SA.

50.     In the normal course of the wire transaction, SUM C was transferred to Citibank

N.A. in the United States, whereupon it was seized by U.S. law enforcement via a warrant issued

in the District of Columbia.

51.     SUM C was subsequently transferred to the custody of the U.S. Marshal Service.

### FIRST CLAIM FOR FORFEITURE

(18 U.S.C. § 981(a)(1)(C) – Property Constituting or Derived from
Proceeds Traceable to a Specified Unlawful Activity – IEEPA Violations)

52.     The allegations contained all foregoing paragraphs of this Verified Complaint for

Forfeiture *In Rem* are incorporated by reference.

53.     Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which

constitutes or is derived from proceeds traceable to a violation of . . . or any offense constituting

specified unlawful activity" is subject to forfeiture by the United States.

54.     "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include,

among other things, offenses related to violations of the International Emergency Economic

Powers Act.

55.     For purposes of the civil forfeiture statutes and pursuant to 18 U.S.C.

§ 981(a)(2)(A), "proceeds" refers to "property of any kind obtained directly or indirectly, as a

result of the commission of the offense giving rise to forfeiture, and any property traceable

thereto, and is not limited to the net gain or profit realized from this offense."

56.     The defendants *in rem* are funds that constitute or are derived from proceeds

traceable to specified unlawful activity, specifically violations of IEEPA.  As a result, the

defendants *in rem* are subject to forfeiture to the United States of America.

## SECOND CLAIM FOR FORFEITURE

(18 U.S.C. § 981(a)(1)(C) – Property Constituting or Derived from Proceeds
Traceable to a Specified Unlawful Activity –Conspiracy to Violate IEEPA)

57.     The allegations contained in all foregoing paragraphs of this Verified Complaint

for Forfeiture *In Rem* are incorporated by reference.

58.     Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which

constitutes or is derived from proceeds traceable to a violation of . . . or any offense constituting

specified unlawful activity…or a conspiracy to commit such an offense" is subject to forfeiture

by the United States.

59.     "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include,

among other things, offenses related to violations of the International Emergency Economic

Powers Act.

60.     For purposes of the civil forfeiture statutes and pursuant to 18 U.S.C.

§ 981(a)(2)(A), "proceeds" refers to "property of any kind obtained directly or indirectly, as a

result of the commission of the offense giving rise to forfeiture, and any property traceable

thereto, and is not limited to the net gain or profit realized from this offense."

61.     The defendants *in rem* are funds that constitute or are derived from proceeds

traceable to a conspiracy to commit specified unlawful activity, specifically a conspiracy to

violate IEEPA.  As a result, the defendants *in rem* are subject to forfeiture to the United States of

America.

## THIRD CLAIM FOR FORFEITURE

(18 U.S.C. § 981(a)(1)(A) – Property Involved in and/or
Traceable to International Money Laundering)

62.     The allegations contained in all foregoing paragraphs of this Verified Complaint for Forfeiture *In Rem* are incorporated by reference.

63.     Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section[] 1956, 1957, or 1960 of this title, or any property traceable to such property" is subject to forfeiture by the United States.

64.     Pursuant to 18 U.S.C. § 1956(a)(2)(A), a person commits money laundering if the person transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds to a place inside the United States from or through a place outside of the United States with the intent to promote the carrying on of specified unlawful activity.

65.     As noted above, 18 U.S.C. § 1956(c)(7) defines "specified unlawful activity" to include, among other things, offenses related to violations of IEEPA.

66.     The defendants *in rem* are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because they constitute property involved in violations of 18 U.S.C. § 1956(h) and 18 U.S.C. § 1956(a)(2)(A), or property traceable to such property, meaning *inter alia*, that the forfeitable property constitutes funds that entered the United States from outside the United States with the intent to promote the carrying on of IEEPA violations.

## REQUEST FOR RELIEF

WHEREFORE, the United States of America requests that Arrest Warrants *In Rem* and notice issue on the defendant property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendant property be forfeited to the United States of America for disposition

according to law; and that the United States of America be granted such other relief as this Court

may deem just and proper, together with the costs and disbursements of this action.

DATED this 18th day of January 2019.

Respectfully submitted,

DEBORAH L. CONNOR
Chief
Money Laundering and Asset Recovery Section

By:

Kathleen Robeson, VA No. 89526
Joseph Palazzo, MA No. 669666
Trial Attorneys
Money Laundering and Asset Recovery Section
Criminal Division, US Department of Justice
1400 New York Avenue, NW
Washington, DC 20005
kathleen.robeson@usdoj.gov
joseph.palazzo@usdoj.gov
tel: (202) 514-1263

## **VERIFICATION**

I, Matthew R. Swetits, a Task Force Officer for the Drug Enforcement Administration, hereby verify and declare under penalty of perjury that I have read the foregoing Verified Complaint For Forfeiture *In Rem* and all exhibits and know the contents thereof, and that the matters contained in the Verified Complaint For Forfeiture *In Rem* are true to my own knowledge.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other sworn law enforcement officers and investigators, as well as my own investigation of this case, along with others.

I hereby verify and declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

EXECUTED on this 18th day of January 2019.

Matthew R. Swetits
Task Force Officer
Drug Enforcement Administration

15