UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o UNITED STATES DEPARTMENT<br>OF JUSTICE, MONEY LAUNDERING<br>AND ASSET RECOVERY SECTION,<br>1400 NEW YORK AVENUE, N.W.,<br>WASHINGTON, D.C. 20005<br><br>        **Plaintiff,**<br><br>        v.<br><br>**THREE SUMS TOTALING $612,168.23**<br>**IN SEIZED UNITED STATES CURRENCY**<br><br>        **Defendants** *in rem.* | Case No. 19-CV-130 (RBW) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO STRIKE AND RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

*COMES NOW*, the plaintiff United States of America, by and through the undersigned attorneys, and files this Memorandum of Law in support of its request for the Court to grant its previously filed Motion for Default Judgment and Order of Forfeiture (Dkt. 12) and render moot the untimely filed Motion to Dismiss (Dkt. 14); or in the alternative strike or deny the Motion to Dismiss and then grant the plaintiff's Motion for Default Judgment and Order of Forfeiture. Notwithstanding these requests by the plaintiff, the Court must also strike the attachments to the Motion to Dismiss (Dkts. 14-2 and 14-6) or at minimum not recognize them as a timely, valid claim.

**I. Background**

The plaintiff initiated this *in rem* forfeiture action on January 18, 2019, pursuant to 18 U.S.C. §§ 981(a)(1) and 984, against property that is involved in and traceable to violations of the International Emergency Economic Powers Act of 1977 (hereafter, "IEEPA"), codified at 50

U.S.C. §§ 1701 - 1706. Dkt. 1. The plaintiff also alleged that the defendants *in rem* are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) as property involved in money laundering transactions and attempted money laundering transactions, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and (h), and as assets traceable to such property. *Id.* In accordance with the Local Rules, the plaintiff duly filed a Notice of Related Case informing the Court that the present matter involved "activities which are a part of the same alleged criminal event or transaction" as the following four matters: *U.S. v. Three Sums Totaling $1,207,035.31 in Seized U.S. Currency*, 1:16-cv-64-RBW; *U.S. v. Kassim Tajideen and Imad Hassoun*, 1:17-cr-46-RBW; *U.S. v. Four Sums Totaling $227,980.00 in Seized U.S. Currency*, 1:18-cv-463-RBW; and *U.S. v. Three Sums Totaling $241,386.58 in Seized U.S. Currency*, 1:18-cv-750-RBW.[1] Dkt. 1-1. Since the filing of said notice in January of 2019, the electronic dockets for those four matters have been openly linked with the electronic docket of the instant matter on CM/ECF.

Arrest warrants-in-rem were issued on January 24, 2019 (Dkt. 6) and notice was issued directly on February 8, 2019, and by publication beginning January 31, 2019 through March 1, 2019. *See* Dkt. 9, p. 2. Having failed to receive claims for more than a year past the statutory deadline, the Clerk of the Clerk entered a Default on April 9, 2020, as required by Fed. R. Civ. P. Rule 55(a). Dkt. 11. The Default means that the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R. W. Amrine Drywall Co., Inc.*, 239 F.Supp.2d 26, 30 (D.D.C. 2002) (citation omitted).

Without filing for leave or moving to intervene, the movants filed the instant motion on May 4, 2020, pursuant to Rule 12(b)(6). Attached to the motion are seven documents, including Dkt. 14-2 and Dkt. 14-6. Although not filed as pleadings, they are both dated May 4, 2020, and

---

[1] Movant in the instant matter, AJC Trading, FZC, represented by counsel of record in the instant matter, Erich Ferrari, Esq., also filed a claim and Motion to Dismiss in *U.S. v. Three Sums Totaling $241,386.58, et al.*

2

are styled as a Claim and Verification by the movants. Neither document was served upon the plaintiff, as required by Supp. Rule G(5)(a)(i)(D), and neither document makes any reference to the verified complaint.

## II. Legal Authority

"Supplemental Rule G for Admiralty or Maritime Claims and Asset Forfeiture Actions governs a forfeiture action *in rem* arising from a federal statute. To the extent that this rule does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure also apply." Fed. R. Civ. P. Supp. G(1); see *United States v. $17,900.00 in U.S. Currency*, 859 F.3d 1085, 1087-88 (D.C. Cir. 2017) (asset forfeiture proceedings are subject to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions).

According to Supplemental Rule (G), a motion to dismiss a civil forfeiture complaint pursuant to Fed. R. Civ. Pro. 12(b) can be filed only by a "claimant who establishes standing to contest forfeiture." Fed. R. Civ. P. Supp. (G)(8)(b)(i); *see United States v. Real Property at 5294 Bandy Rd,* 2014 WL 5513748, *5 (D. Idaho Oct. 31, 2014) ("The court may consider the merits of claimant's motion to dismiss the forfeiture action only if the claimant has standing"); *United States v. $54,711.26 U.S. Currency*, No. WDQ-06-1376 (D. Md. June 7, 2007) (claimant who failed to file a timely claim lacks statutory standing and so has no basis for objecting to the complaint). More specifically, "a claimant must meet both Article III and statutory standing requirements" to be heard. *$17,900.00 in U.S. Currency*, 859 F.3d at 1089; *citing United States v. $487,825*, 484 F.3d 662, 664 (3d Cir. 2007). In the forfeiture context, "[t]he term 'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court, while 'Article III standing' relates to claimant's ability to show that he has a sufficient interest in the property to satisfy the case-or-

3

controversy requirement of Article III of the Constitution." *United States v. 8 Gilcrease Lane,* 641 F. Supp. 2d 1, 5–6 (D.D.C 2009), quoting *Asset Forfeiture Law in the United States,* § 9-4 at p. 326. Consequently, potential claimants with Article III standing are routinely barred from litigating *in rem* forfeiture cases where strict adherence to Supplemental Rule G(5) has not been followed. *E.g.*, *United States v. $417,143.48, more or less, in U.S. Currency*, 682 F. App'x. 17 (2d Cir. 2017) (claimants who fail to comply with Rule G(5) by filing untimely, unverified claims lack statutory standing); *United States v. $94,600 in U.S. Currency, et al.*, 681 F. App'x. 491 (7th Cir. 2017) (claimant who fails to file timely, verified claim lacks statutory standing by not complying with Rule G(5)); *United States v. $99,500 in U.S. Currency Seized on March 20, 2016, et al.*, 2017 WL 57295 (N.D. Ohio Jan. 5, 2017) (claimant who claims ownership of seized currency without providing any supporting factual details fails to satisfy Rule G(5) and lacks statutory standing to challenge forfeiture); *United States v. $100,000 in U.S. Currency,* 2014 WL 1330845, *5 (S.D. Fla. Mar. 28, 2014) (even if claimant's bailment theory were sufficient for Article III standing, her claim would fail because she did not assert bailment in her claim as required by Rule G(5)(a), and thus lacked statutory standing).

To remedy the burden of frivolous and fraudulent claims, Supplemental Rule G(8)(c) specifically authorizes the United States to move to strike claims for failing to comply with procedural requirements set forth in Supplemental Rule G(5) and G(6), or otherwise lack the requisite standing. *United States v. $25,790 in U.S. Currency,* 2010 WL 2671754, *4 (D. Md. July 2, 2010) (in granting motion to strike claim filed 102 days after the filing deadline, the court found that, "[t]he intent of Supplemental Rule G(5) plainly is that claimants who fail to timely file forfeit their claims unless they possess an adequate excuse. Allowing a late filing would subvert the strict time limits established by Supplemental Rule G(5) and encourage claimants to litigate every

untimely filing in a forfeiture case."), *quoting United States v. Borromeo,* 945 F.2d 750, 755 (4th Cir. 1991). Once a claim is struck and there are no other claimants on the record, it is proper for the Court to enter Default Judgment in favor of the plaintiff government. *E.g., United States v. $65,419 in U.S. Currency*, 2017 WL 3896660 (C.D. Ill. Sept. 6, 2017) (after Court granted government's motion to strike the claims and answers, determined no other claims were filed, and government complied with all the procedural requirements, Court granted government's motion for entry of default); *United States v. Assorted Jewelry Valued at $13,430,* 2013 WL 775542, *2 (D.N.J. Feb. 28, 2013) (granting motion to strike and immediately entering default judgment in the absence of any other claims); *United States v. $1,000 Refunded to Mango Creek Properties, Inc.*, 2012 WL 254044, *2 (D. Neb. Jan. 27, 2012) (granting motion to strike for lack of statutory standing and entering default judgment); *United States v. $5,565 in U.S. Currency,* 2010 WL 4222047 (D. Colo. Oct. 20, 2010) (Court struck answer that was filed without a verified claim, and entered judgment for the government because there were no other claimants).

When the sufficiency of a forfeiture complaint is challenged, the Court's analysis "is governed by Rule G(2)," which requires that an *in rem* forfeiture complaint,

> (a) be verified;
> (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;
> (c) describe the property with reasonable particularity;
> (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;
> (e) identify the statute under which the forfeiture action is brought; and
> (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Fed. R. Civ. P. Supp. G(2).

Courts have consistently found that the Government does not have to prove its case just to get in the courthouse door; it need only show that the facts set forth in the complaint are sufficient

5

to create a reasonable belief that the Government will be able to meet its burden of proof at trial. *United States v. $74,500 in U.S. Currency*, 2011 WL 2712604, *2 (D. Md. July 11, 2011); *see also* Rule G(8)(b)(ii) ("the complaint may not be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property). The "Court's function on a motion to dismiss is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Bigsby v. Barclays Capital Real Estate*, 170 F. Supp. 3d 568, 582 (S.D.N.Y. 2016).

In fact, for the purposes of deciding the merits of the current motion, the Court must, "take all of the factual allegations in the complaint as true" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), "even if doubtful in fact." *Bell Atlantic v. Twombly*, 550 544, 555 (2007). The Court must further construe all inferences, "in the light most favorable to plaintiff," and look to the totality of the circumstances, including the circumstantial evidence alleged in the complaint. *N.M. State Inv. Council v. Ernst & Young*, 641 F.3d 1089, 1094 (9th Cir. 2011), *e.g.*, *City of Moundridge v. ExxonMobil*, 250 F.R.D. 1, 4 (D.D.C. 2008). However, "there is no requirement that all facts and evidence at the government's disposal be pled in the complaint." *United States v. $79,321 in U.S. Currency*, 522 F. Supp. 2d 64, 17 (D.D.C. 2007) (emphasis in original).

### III. Arguments

#### A. The Purported Claim Attached to the Motion to Dismiss is Invalid

"[C]ompliance with Rule G(5) is not a mere procedural technicality." *United States v. Assorted Jewelry Valued at $13,430,* 2013 WL 775542, *2 (D.N.J. Feb. 28, 2013). A potential claimant's "failure to comply with the applicable filing requirements preclude his standing as a party to the action." *United States v. One 1994 BMW 325*, 99 F. App'x. 793, 794 (9th Cir. 2004). Here the purported claim attached to the Motion to Dismiss is invalid because it fails at least two

6

basic requirements of the Supplemental Rules governing forfeiture claims. *United States v. Real Prop. and Premises Known as 323 Forrest Park Dr.*, 521 F. App'x. 379, 384 (6th Cir. 2013) (granting government's motion for summary judgment where potential claim was two days late and unverified, the Court found "a claimant must comply strictly with Supplemental Rule G(5)"); *United States v. $12,126 in U.S. Currency,* 337 F. App'x. 818, 820 (11th Cir. 2009) (affirming order striking claim for lack of statutory standing, "the district court was entitled to insist upon strict compliance with the procedural requirements set forth in Rule G(5)").

First, the movants failed to serve the putative claim upon the government as required by Supp. Rule G(5)(a)(i)(D). Rather than give notice to the plaintiff of a possible challenge to the allegations of the verified complaint, the movants waited until after the Clerk of the Court had entered a Default and then attempted to slip the purported claim onto the docket as an attachment. Such action by the movants is inconsistent with strict adherence of the Supplemental Rules, and courts have routinely disallowed similar claims. *E.g., United States v.$70,670 in U.S. Currency, et al.*, 2017 WL 714231 (S.D. Fla. Feb. 23, 2017) (to establish statutory standing, a claimant must comply with the procedural requirements under the Supplemental Rules, including file a verified claim and answer to the government's complaint, as well as to serve them on the government's attorney); *United States v. Approx. 64 Dogs*, 2016 WL 7046613 (C.D. Ill. Dec. 2, 2016) (where claimants failed to verify their claims and failed to properly serve their claims on the government, they lacked standing to contest a motion by the government).

Second, the movants' purported claim is woefully outside the bounds of timeliness. The rules call for a claim to be filed either 30 days from receipt of direct notice, or 60 days from the first date of the government's notice by publication. Fed. R. Civ. P. Supp. G(5)(a)(ii)(B). Courts have consistently viewed the filing of a timely claim to be a key requirement of statutory standing

because it, "allows the court to hear all interested parties and to resolve the dispute without delay, and it also minimizes the danger of false claims." *United States v. $102,535 in U.S. Currency,* 499 F. App'x. 134, 136 (3d Cir. 2012); *see also United States v. Union Bank for Savings and Investment (Jordan)*, 487 F.3d 8, 16 (1st Cir. 2007) ("the deadline for filing a claim in a forfeiture proceeding exists precisely to force all claims… to be made known at the outset of the proceeding"). In the instant case, the government satisfied both notice requirements. *See* Dkt. 9, p. 2. In addition, the movants and their counsel received actual notice of the instant civil *in rem* action on January 18, 2019, when this case's docket was electronically linked via CM/ECF to the docket of *U.S. v. Three Sums Totaling $241,386.58, et al.,* a related matter involving the movants and their same legal counsel. Dkt. 1-1. Over fifteen months expired after notice was received by the movants and prior to the Clerk entering a Default. During that period, the movants filed no claims.

Accordingly, the Court should strike the Motion to Dismiss because the movants, having failed to file and serve a timely claim, lack statutory standing to challenge the merits of the verified complaint. *E.g.*, *United States v. $417,143.48, more or less, in U.S. Currency*, 682 F. App'x. 17 (2d Cir. 2017) (claimants who fail to comply with Rule G(5) by filing untimely, unverified claims lack statutory standing); *United States v. $94,600 in U.S. Currency, et al.*, 681 F. App'x. 491 (7th Cir. 2017) (claimant who fails to file timely verified claim lacks statutory standing by not complying with Rule G(5)); *United States v. $417,143.48 in U.S. Currency*, 2015 WL 5178121 (E.D.N.Y. Sept. 2, 2015) (denying motion to dismiss the complaint because putative claimant had not satisfied Rule G(5)'s requirements with respect to filing a timely and compliant claim, and so lacked statutory standing to pursue a motion to dismiss).

**B. The Motion to Dismiss Is Meritless**

The plaintiff alleges that the *res* constitutes funds that entered the U.S. financial system in violation of IEEPA, and further alleges the *res* is therefor forfeitable as proceeds of IEEPA violations and as funds involved in money laundering violations where IEEPA violations are the requisite underlying specified unlawful activity. Dkt. 1, para. 1. The movants make two arguments in favor of dismissal. First, the movants posit that the plaintiff's theories of forfeiture all fail because the financial transactions involving the *res* did not violate IEEPA. Dkt. 14-1, p. 2. Second, the movants argue that the plaintiff has not alleged sufficient facts to support forfeiture. *Id.*, at 7-8. A plain reading of the verified complaint, however, demonstrates that the plaintiff's legal theories are sound and the facts, as alleged, adequately support forfeiture.

The burden of the plaintiff at trial is to prove that the *res* is subject to forfeiture by a preponderance of the evidence. 18 U.S.C. § 983(c)(1); *United States v. Sum of $70,990,605, et al.*, 4 F.Supp.3d 189, 197 (D.D.C. 2014). However, "[a]t the pleading stage, it suffices for the government to simply allege enough facts so that the claimant may understand the theory of forfeiture, file a responsive pleading, and undertake an adequate investigation." *United States v. One Gulfstream G–V Jet Aircraft,* 941 F.Supp.2d 1, 14 (D.D.C. 2013), *citing United States v. Mondragon,* 313 F.3d 862, 864 (4th Cir. 2002). In accordance with these requirements, the verified complaint sets forth a series of allegations subtitled, "PERSONS AND ENTITIES ACTING ON BEHALF OF AND/OR OWNED BY SDGTs." Dkt. 1, p. 7 (emphasis in original). The plaintiff then identifies "AJC, Ramani, and SRG" (the movants) as being managed daily by "Ali Jaber and Hussein Jaber," but that they "are entities owned by, controlled by, or operated for the benefit of, Kassim Tajideen and Ovlas Trading SA." *Id*. In support of this central allegation, the plaintiff further alleges that, "AJC, Ramani, and SRG share resources, finances, personnel, and other

interests with Ovlas Trading SA" to such an extent that "business conducted by AJC, Ramani, and SRG is conducted on behalf of SDGT Ovlas Trading SA and SDGT Kassim Tajideen." *Id.*, p. 8.

If these allegations are proven true at trial, or are considered to be true by the Court for the purpose of the instant Motion to Dismiss, they are sufficient to prove that violations of IEEPA have taken place because the wire transactions involving the *res* that are alleged on pages 9 through 11 of the verified complaint are therefor attributable to an individual and an entity that are prohibited by law from transacting with unlicensed U.S. persons and businesses. Movants contend that the transactions do not violate IEEPA because they – AJC, Ramani, and SRG – are not themselves SDGTs. Dkt. 14-1, p. 10. However, this is not a viable defense. Anti-terrorism regulations promulgated under IEEPA are broadly written and unambiguously apply to actors such as the movants, who transact on behalf of, or for the benefit of, persons and entities legally prohibited from transacting with unlicensed U.S. persons and businesses. 31 C.F.R. § 594.204

Specifically, as alleged in the complaint, Executive Order 13224 and the Global Terrorism Sanctions Regulations ("GTSR") were both created pursuant to IEEPA. Dkt. 1, p. 5. As further alleged, the GTSR created a list of persons and entities known as SDGTs, including Kassim Tajideen and Ovlas Trading SA, with whom "it is illegal for any U.S. person or entity to engage in any transaction" directly or "with any undesignated third-party entity or person acting on behalf of the designated SDGT without first obtaining a license from OFAC." *Id*. In fact the GTSR is much broader than plaintiff's complaint, prohibiting, "any transaction or dealing in property or interests in property" of an SDGT, including but not limited to "[t]he making of any contribution of funds, goods, or services by, to, or for the benefit of," an SDGT. 31 C.F.R. § 594.204. The regulation goes on to define interest in property as "an interest of any nature whatsoever, direct or indirect" 31 C.F.R. § 594.306.

The plaintiff's factual allegations that AJC, Ramani, and SRG are "owned by, controlled by, or operated for the benefit of, Kassim Tajideen and Ovlas Trading SA" therefor meet the threshold for sufficient facts needed to survive a motion to dismiss. The plaintiff alleges that U.S. financial institutions handling the *res* should have acquired licenses from the Treasury Department because financial services provided to AJC, Ramani, and SRG were beneficial to SDGTs Kassim Tajideen and Ovlas Trading SA. As the U.S. banks allegedly did not acquire licenses, the actions of AJC, Ramani, and SRG fall squarely into IEEPA's definition of prohibited behavior. The penalties section of IEEPA makes it "unlawful for a person to violate, attempt to violate, conspire to violate, **or cause** a violation of any license, order, regulation, or prohibition" issued under IEEPA. 50 U.S.C. § 1705 (emphasis added).

The movants, meanwhile, have mistakenly argued that the transactions involving the *res* did not violate IEEPA because they were not "blocked" pursuant to IEEPA by the U.S. financial institutions that handled them. Dkt. 14-1, p. 2 ("were the Government correct… the Defendant Property at issue would have been blocked (i.e., frozen) as soon as the funds came within U.S. jurisdiction, and any dealings in that property would have been prohibited under IEEPA"). This circular logic is unsupported by the law. While U.S. financial institutions have obligations under the Bank Secrecy Act to perform due diligence on their customers, nothing in the IEEPA, Executive Order 13224, or the GTSR designates banks as the final arbiters of what is violative of IEEPA. The movants have cited no authority in support of their position.

To be sure, movants also misinterpret the central provisions of IEEPA and its associated regulations regarding blocking. The Motion to Dismiss seems to argue that IEEPA only applies to two categories of people and entities – either those explicitly designated by name under the SDGT or other equivalent SDN program; or those undesignated entities that pass an ownership threshold

11

of fifty percent. *Id.*, p. 7-8. Movants argue that AJC, Ramani, and SRG are not in either category and therefore can not violate the IEEPA. *Id*. Such an interpretation belies the fact that IEEPA and its associated regulations create no such binary system of application. IEEPA's prohibitions clearly apply to all "interest[s] of any nature whatsoever, direct or indirect" that benefit an SDGT. 31 C.F.R. § 594.306. The transactions conducted with the *res* by AJC, Ramani, and SRG are further implicated by the GTSR prohibition of, "any transaction… that evades or avoids, has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth." The plaintiff alleges that "AJC, Ramani, and SRG share resources, finances, personnel, and other interests with Ovlas Trading SA" and that "business conducted by AJC, Ramani, and SRG is conducted on behalf of SDGT Ovlas Trading SA and SDGT Kassim Tajideen. *Id*., p. 8. If proven to be true at trial, or when considered to be true for the purpose of the Motion to Dismiss, these facts demonstrate that the financial activity with the *res* conducted by the movants "evades or avoids" the prohibitions placed upon the financial activity of SDGTs Ovlas Trading SA and Kassim Tajideen. Finding otherwise would legalize financial dealings with SDGTs that take place through non-SDGT surrogates, essentially rendering the IEEPA and its associated regulations as meaningless or at the very least, unenforceable. Accordingly, the Court should reject the movants' arguments and deny the Motion to Dismiss if it finds it appropriate to reach its merits.

## IV. Conclusion

*WHEREFORE*, for the foregoing reasons, the Court should strike the Motion to Dismiss, or in the alternative deny the Motion to Dismiss; and further grant the plaintiff's Motion for Default Judgment and Order of Forfeiture.

DATED: May 25, 2020					Respectfully submitted,

						DEBORAH L. CONNOR
						Chief
						Money Laundering and Asset Recovery Section

				By:		  /s/
						Joseph Palazzo, MA No. 669666
						Trial Attorney, Criminal Division
						United States Department of Justice
						1400 New York Avenue, N.W. – 10th Floor
						Washington, DC 20005
						(202) 514-1263

						Attorneys for Plaintiff
						UNITED STATES OF AMERICA