# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 19-CV-130 (RBW) |
| c/o UNITED STATES DEPARTMENT | ) |  |
| OF JUSTICE, 1400 NEW YORK AVENUE, | ) |  |
| N.W., 10TH FLOOR, WASHINGTON, | ) |  |
| D.C. 20005 | ) |  |
|  | ) | **MEMORANDUM IN** |
| Plaintiff, | ) | **SUPPORT OF** |
|  | ) | **MOTION TO DISMISS** |
| v. | ) | **AND IN OPPOSITION TO** |
|  | ) | **MOTION TO STRIKE** |
| THREE SUMS TOTALING $612,168.23 | ) |  |
| IN SEIZED UNITED STATES CURRENCY | ) |  |
|  | ) |  |
| Defendants *in rem*. | ) |  |

_____

**CLAIMANTS AJC TRADING FZC, SRG INDUSTRIES (GHANA) LTD., AND RAMANI DISTRIBUTION COMPANY, LTD.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE VERIFIED COMPLAINT FOR FORFEITURE *IN REM*, AND IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

I.      Claimants' Motion to Dismiss Should be Granted Because the Government Failed to Plead
        Facts Sufficient to Support an IEEPA Violation ................................................................3

        A. The Government Does Not Allege Facts Showing that Claimants are Blocked ..........8

        B. The Government Does Not Allege Facts Showing a Blocked Interest in the Defendant
           Property........................................................................................................................ 12

II.     Claimants' Motion to Dismiss Should Not Be Dismissed on Procedural Grounds.......... 15

        CONCLUSION........................................................................................................................ 19

# TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE(S)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................3

*Au Bon Pain Corp. v. Artect, Inc.*,
    653 F.2d 61 (2d Cir. 1981)....................................................................................4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................. 10

*Bigsby v. Barclays Capital Real Estate*,
    170 F. Supp. 3d 568 (S.D.N.Y. 2016)......................................................... 10, 12

*Cripps v. Life Ins. Co. of North America*,
    980 F.2d 1261 (9th Cir. 1992) ..............................................................................4

*Iqbal v. Hasty*,
    490 F.3d 143 (2d Cir. 2007).................................................................................3

*Jackson v. Beech*,
    636 F.2d 831 (D.C. Cir. 1980) .......................................................................2, 18

*Jung v. Association of American Medical Colleges*,
    339 F. Supp. 2d 26 (D.D.C. 2004) ..................................................................... 18

*Marsoun v. United States*,
    880 F. Supp. 2d 59 (D.D.C. 2012) ..................................................................3, 12

*Nichols v. Young*,
    248 F. Supp. 3d 1 (D.D.C. 2017) ....................................................................... 18

*Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*,
    515 F.2d 1200 (5th Cir. 1975) .............................................................................3

*Thompson v. Wooster*,
    114 U.S. 104 (1884)..............................................................................................3

*United States v. $12,914 in U.S. Currency*,
    828 F.Supp.2d 822 (D. Md. 2011) ..................................................................... 15

*United States v. $79,321.00*,
    522 F. Supp. 2d 64 (D.D.C. 2007) .......................................................................4

iii

*United States v. $134,972.34 Seized from FNB Bank*,
　　94 F. Supp. 3d 1229 (N.D. Ala. 2015) ............................................................3

*United States v. $487,825.00 in U.S. Currency*,
　　484 F.3d 662 (3d Cir. 2007)...................................................................... 17

*United States v. $8,221,877.16 in U.S. Currency*,
　　330 F.3d 150 (3d Cir. 2003)...................................................................... 17

*United States v. 2007 Chrysler 300 Touring VIN:2C3KA53G27H883668*,
　　No. CIV 10-0246 JB WDS,
　　2011 WL 1119701 (D.N.M. Mar. 10, 2011) ................................................ 16

*United States v. All Assets Held at Bank Julius*,
　　228 F. Supp. 3d 118 (D.D.C. 2017) ........................................................... 15

*United States v. Borromeo*,
　　945 F.2d 750 (4th Cir. 1991) .................................................................... 15

*United States v. Eighty-Two Thousand Three Hundred Dollars in U.S. Currency*,
　　2:18-cv-11848 (E.D. Mich. Mar. 11, 2019) ................................................ 16

*United States v. Funds from Prudential Secs.*,
　　300 F. Supp. 2d 99 (D.D.C. 2004) ............................................................ 16

*United States v. Holy Land Found. for Relief & Dev.*,
　　722 F.3d 677 (5th Cir. 2013) .................................................................... 13

*United States v. One 2007 Mercedes Benz CLS*,
　　Civil No.: WDQ-11-3390 (D. Md. Mar. 27, 2012)......................................... 15

*United States v. One Men's Rolex Pearl Master Watch*,
　　357 F. App'x 624 (6th Cir. 2009) .............................................................. 16

*United States of America v. Three Sums Totaling $241,386.58
　　in Seized United States Currency*,
　　Case No. 18-CV-750 (D.D.C. Apr. 3, 2018) ........................................... 16, 17

*United States v. United States Currency in the Amount of $2,857.00*,
　　754 F.2d 208 (7th Cir. 1985) .................................................................... 16

*Vanderhorst v. Blue Cross Blue Shield Ass'n*,
　　99 F.Supp.3d 46 (D.D.C. 2015)................................................................. 18

*Wahl v. McIver*,
　　773 F.2d 1169 (11th Cir. 1985) ..................................................................4

## ADMINSTRATIVE REGULATIONS

31 C.F.R. § 594.201 ...............................................................................5, 8, 10

31 C.F.R. § 594.202 ...................................................................................5, 14

31 C.F.R. § 594.203 ........................................................................................5

31 C.F.R. § 594.204 .............................................................................5, 12, 13

31 C.F.R. § 594.301 ........................................................................................ 5

31 C.F.R. § 594.306 ...................................................................................... 12

31 C.F.R. § 594.412 ...................................................................................8, 10

## RULES

Fed. R. Civ. P. Supp. R. G ....................................................................*passim*

D.D.C. LCvR7 ............................................................................................... 19

## OTHER MATERIALS

U.S. Dep't of Treasury, *OFAC Delists En+, Rusal, and EuroSibEnergo*,
 Jan. 27, 2019, https://home.treasury.gov/news/press-releases/sm592 ..............................6

U.S. Dep't of Treasury, Office of Foreign Assets Control,
 Frequently Asked Question # 9 (September 10, 2002)..................................... 13

U.S. Dep't of Treasury, Office of Foreign Assets Control,
 Frequently Asked Question # 91 (Jan 15, 2015)...........................................8

U.S. Dep't of Treasury, Office of Foreign Assets Control,
 Frequently Asked Question # 402 (August 13, 2014) ..............................7, 9, 10

U.S. Dep't of Treasury, Office of Foreign Assets Control,
 Frequently Asked Question # 585 (May 1, 2018)...........................................9

U.S. Dep't of the Treasury, *Revised Guidance on Entities Owned
by Persons Whose Property and Interests in Property are Blocked*, Aug. 13, 2014,
https://www.treasury.gov/resource-center/sanctions/Documents/licensing_guidance.pdf............9

Claimants AJC Trading FZC ("AJC"), SRG Industries (Ghana) Ltd. ("SRG"), and Ramani Distribution Company, Ltd. ("Ramani") (collectively, the "Claimants") submit this reply brief in support of their Motion to Dismiss the Government's Verified Complaint for Forfeiture *In Rem* (the "Complaint") pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and in opposition to Plaintiff's Motion to Strike.

## INTRODUCTION

The Plaintiff's—the United States of America (the "Government")—Complaint should be dismissed because this Court cannot grant the relief it requests, as the Government has failed to allege that Claimants' funds transfers violate U.S. law. A finding of violation of the relevant economic sanctions authorities in this case requires that either a party to a transfer be blocked or that a blocked party has some demonstrable interest in the transfer itself. In this matter, however, none of the Claimants are blocked, nor has the Government alleged any facts that a blocked party has any interest in the specific funds transfers at issue (collectively, the "Defendant Property"). Instead, the Government claims that a sanctioned party's alleged relationship with another company may deem every transaction by that company prohibited. This position is not supported by law, and if allowed to stand, would impermissibly expand the Government's authority by permitting it to seize any transaction coming into the United States because of some vague, alleged relationship between sanctioned parties and the actual parties to a transaction.

Further, had a sanctioned person held some interest in the Defendant Property—they did not—the funds transfers would themselves have been blocked as a matter of law from the moment they entered the United States. Were that the case, all further unlicensed dealings in those transactions by any party, including the Government, would have been prohibited by IEEPA.

Simply put then, either the Defendant Property is not blocked property under IEEPA—and thus no dealing in blocked property occurred to cause a violation of IEEPA—or the Defendant Property is blocked property and the Government's efforts to seize the Defendant Property are void and unlawful. The Government cannot have it both ways, and the Verified Complaint fails regardless of which theory is correct.

Although the Government seeks to dodge compliance with the law by drawing the Court's attention to the manner in which Claimants' Motion to Dismiss was presented, procedure and technicalities should not allow the Government to unlawfully keep hundreds of thousands of dollars that were impermissibly seized in the first place. Moreover, to accept the Government's attempt to rely on purported procedural irregularities to dispose of this matter would be contrary to the D.C. Circuit's "strong policies favoring the resolution of genuine disputes on their merits." *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980).

The decision whether to allow this case to proceed is completely at the Court's discretion. Thus, regardless of the desire of other courts to apply strict compliance with Supplemental Rule G for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G"), this Court may use its discretion to allow Claimants' claims and interests to be considered so long as the Government is not prejudiced. As the Court is aware, the Government's Motion to Strike has not alleged any prejudice that would come from this Court considering the merits of whether the Government lawfully claimed an IEEPA violation in the first instance.

Further, the purposes of Rule G are not frustrated by allowing this matter to proceed. That is because the Court can resolve this dispute without delay given that it is already familiar with the issues and arguments presented here from a nearly identical civil forfeiture proceeding pending before this Court that involves similar claimants and issues, as well as similar legal arguments by

the parties. In addition, Claimants' Motion to Dismiss does not present any likelihood of false claims because Claimants simultaneously filed a Verified Claim that adequately identifies Claimants' interests. Fed. R. Civ. P. Supp. G(5). Indeed, if there were any procedural errors that should dispose of this case, it is the Government's own failure to file an opposition to Claimants' Motion to Dismiss within the time period allotted by the Local Rules, thereby conceding that motion and its arguments.

For the reasons stated herein, there are no arguments or procedural grounds that can rectify the consequential legal deficiencies in the Government's Complaint, and it should be dismissed accordingly.

## I.     Claimants' Motion to Dismiss Should be Granted Because the Government Failed to Plead Facts Sufficient to Support an IEEPA Violation

Rule G requires that an *in rem* forfeiture complaint, "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). Courts perform a context-specific analysis to determine whether a plaintiff's factual allegations meet this standard. *United States v. $134,972.34 Seized from FNB Bank*, 94 F. Supp. 3d 1224, 1228 (N.D. Ala. 2015) (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).  In doing so, however, courts are not bound to accept "a legal conclusion couched as a factual allegation or naked assertions [of unlawful misconduct] devoid of further factual enhancement." *Marsoun v. United States*, 880 F. Supp. 2d 59 (D.D.C. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009)).

Further, courts have found that a defendant's default does not by itself warrant a default judgment, as there must be a sufficient basis in the pleadings for the judgment entered, and facts that are not well-pleaded or conclusions of law are not required to be admitted to. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); Accord *Thompson*

*v. Wooster*, 114 U.S. 104 (1884); Accord *Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1267 (9th Cir. 1992) (default judgment improper where complaint legally insufficient) (citation omitted); *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985) (motion for default judgment correctly denied where complaint failed to state a claim for relief against the defendant); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("…a district court has discretion…once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action….") (citation omitted).

The Government's allegations in this matter are precisely what courts do not and cannot accept—legal conclusions that have been presented as factual allegations. To be clear, Claimants are not arguing that the Government must plead all relevant facts in its Complaint. Rather, the Government must give "specific information about the seizure[s] at issue sufficient to apprise the claimant of the factual circumstances underlying [the] forfeiture action." *United States v. $79,321.00*, 522 F. Supp. 2d 64, 73 (D.D.C. 2007). The Government in this matter instead alleges IEEPA violations by stating its legal conclusions and then presents them as alleged facts. In doing so, however, the Government fails to apprise Claimants how the specific transfers at issue each involved a blocked interest or party.

Under the Global Terrorism Sanctions Regulations ("GTSR"), 31 C.F.R. Part 594, promulgated pursuant to Executive Order ("E.O.") 13224 and IEEPA, U.S. persons cannot transact or deal in property or interests in property of persons whose property and interests in property are blocked, absent authorization from the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"). 31 C.F.R. § 594.204. The GTSR defines blocked property as any property subject to the prohibition in 31 C.F.R. § 594.201 held in the name of a person whose property or interests in property are blocked pursuant to § 594.201(a), or in which such person has

an interest. 31 C.F.R. § 594.301. Persons blocked pursuant to §594.201(a) are those identified in the Annex to E.O. 13224 or determined to meet other criteria set forth in that section by the Secretary of State, Secretary of Treasury, or the United States Department of the Treasury's Office of Foreign Assets Control. 31 C.F.R. § 594.201(a). Such persons are commonly referred to as SDGTs. 31 C.F.R. § 594.201(a), n.2. Thus, an IEEPA violation arising from a prohibition imposed by E.O. 13224 or the GTSR requires either (1) that there is a party to the transactions blocked by 31 C.F.R. §594.201(a), or (2) that such a blocked party has a specific interest in the transactions.

The Government however claims that funds transfers involving Claimants coming into U.S. jurisdiction inherently violate IEEPA because the Government itself alleges that Claimants are owned, controlled, operated on behalf of, or conducting business for, Kassim Tajideen and/or Ovlas Trading, who themselves are SDGTs. The Government pins that alleged relationship not on the fact that either of those SDGTs have any actual ownership interests in the Claimants, but rather on an allegation that Claimants (who are not designated under IEEPA or E.O. 13224) and Tajideen and/or Ovlas Trading purportedly share resources, finances, personnel, and interests. Verified Complaint ¶ 32.

The Government seeks to obscure their obvious failure to properly understand the scope of E.O. 13224 and the GTSR by arguing that to find otherwise would "legalize financial dealings with [Specially Designated Global Terrorists ("SDGTs")] that take place through non-SDGT surrogates." Gov't Opp'n to Def.'s Mot. to Dismiss at 12. The Government's argument, however, makes little sense, misses the point, and is a naked attempt to expand the scope of its authority. The law already blocks any transactions in which there is *any* interest whatsoever of a SDGT upon entry into U.S. jurisdiction, requires that blocking to be reported to OFAC, and prohibits all dealings in that blocked property. 31 C.F.R. §§ 594.201-594.204. The Government does not—and

cannot—cite to any law or guidance that says a party's—that is not blocked by E.O. 13224 or the GTSR—interests in property are blocked under the GTSR because it has some other alleged business relationship to SDGTs, absent some demonstrable interest of those SDGTs in the specific property. And, as noted above, if there is no blocked property involved, then there is no violation of IEEPA, E.O. 13224, or the GTSR.

In addition, and critically, the theory of IEEPA liability that the Government pursues in this case would radically expand the scope of its authority under IEEPA. This is because it would take the existing authority to block specifically identified parties, the companies they majority own, and specific transactions in which they have an interest, and extend it to block and prohibit transactions with entities in which a blocked party has only a minority interest or some other alleged relationship.

The Court does not have to look far for an example of how IEEPA-based sanctions are administered, however, to understand that such a use of IEEPA is neither lawful nor intended. Specifically, last year OFAC expressly lifted IEEPA-based sanctions on a foreign entity because its blocked owner had reduced his ownership in the company. U.S. Dep't of Treasury, *OFAC Delists En+, Rusal, and EuroSibEnergo*, Jan. 27, 2019, https://home.treasury.gov/news/press-releases/sm592. Although the blocked person remains sanctioned, maintains an ownership interest of 44.95%, and has voting rights in the foreign entity, the sanctions on that entity have nonetheless been lifted. *Id*. If the theory of IEEPA liability that the Government is pursuing in the instant matter were correct, that foreign entity's delisting would be meaningless, and every transaction that the foreign entity engages in would inherently involve a blocked person and thus constitute an IEEPA violation if the transaction came within U.S. jurisdiction.

This is, of course, demonstrably not the case as the foreign entity was expressly unblocked notwithstanding an IEEPA-blocked person's continued ownership stake and voting rights in the company, and the U.S. Government does not deem transactions by that entity involving the United States to violate IEEPA. This is because entities in which the aggregate of one or more blocked persons' ownership stakes has fallen below 50 percent are not considered blocked, and therefore property of such entities that comes into the United States or the possession or control of a U.S. person while the aggregate of one or more blocked persons' ownership stakes is below 50 percent is not considered blocked. *See* U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 402 (August 13, 2014).

Claimants respectfully request that the Court consider that the government has not alleged anything equivalent to actual ownership stakes and voting rights here to demonstrate ownership or control. Rather, the Government relies upon vague allegations of the sharing resources, finances, personnel, and interests to plead ownership, control, or operation on behalf of blocked persons to insinuate an IEEPA violation. Verified Complaint ¶¶ 29, 32.  If an IEEPA-blocked person's nearly 45% ownership and voting rights in a foreign entity do not impose a blocking of that entity, nor violations of IEEPA arising from that entity's transactions coming into the United States, then certainly the vague undefined allegations plead by the Government do not evidence any such blockings or violations. Thus, the Government's position on what constitutes a violation IEEPA is clearly wrong, and its interpretation of the scope of IEEPA is undermined by the Executive's use and guidance regarding IEEPA-based sanctions programs in other instances.

In short, and as discussed further below, the Government has failed to show any blocked interest in the Defendant Property in accordance with either the requirements of the GTSR, or in satisfaction of Rule G's requirement that it "state sufficiently detailed facts to support a reasonable

belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). Therefore, the Government's Complaint should be dismissed for failing to allege any violation of IEEPA.

### A.   The Government Does Not Allege Facts Showing that Claimants are Blocked

The Government's Complaint seeks forfeiture of the Defendant Property pursuant to three claims that all are predicated on purported IEEPA violations. Verified Complaint ¶¶ 56, 61, 66. Specifically, the Government implies that the Defendant Property implicates Kassim Tajideen and Ovlas Trading SA who were designated as SDGTs by OFAC under E.O. 13224 and the GTSR. *Id*. ¶¶ 21-22. The Government further alleges that Claimants are "owned by, controlled by, or operated for the benefit of, Kassim Tajideen and Ovlas Trading SA." *Id*. ¶ 29. Again, to support this legal conclusion, the Government alleges only that Claimants "share resources, finances, personnel, and other interests with Ovlas Trading SA" and other entities operated by Ali Jaber for the benefit of Kassim Tajideen. *Id*. ¶¶ 32-33. The Government also relies on these short, unsubstantiated, conclusory statements to assert that Claimants conduct business "on behalf of SDGT Ovlas Trading SA and SDGT Kassim Tajideen." *Id*. at ¶ 33.

The Secretary of the Treasury, the Secretary of State, and OFAC have been delegated the authority under E.O. 13224 to designate and block individuals and entities as SDGTs. Foreign persons that are designated as SDGTs are added to OFAC's List of Specially Designated Nationals and Blocked Persons ("SDN List"). 31 C.F.R. §594.201 n.2 to ¶ (a); U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 91 (Jan. 15, 2015). The Government has not, and cannot, allege that Claimants are designated and blocked, as they have never been designated by either the Secretary of the Treasury, the Secretary of State, nor OFAC and have never appeared on the SDN List.

Further, under the GTSR, if one or more SDGTs own an entity 50 percent or more in the aggregate, then that entity is automatically blocked by operation of law. 31 C.F.R. § 594.412. This is commonly known across OFAC sanctions programs as the 50 Percent Rule. U.S. Dep't of the Treasury, *Revised Guidance on Entities Owned by Persons Whose Property and Interests in Property are Blocked*, Aug. 13, 2014, https://www.treasury.gov/resource-center/sanctions/Documents/licensing_guidance.pdf. As OFAC has made clear, however, where one or more blocked persons do not hold a 50 percent or greater interest in an entity, that entity and its property are not blocked by the 50 Percent Rule. *See* U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 402 (August 13, 2014); Frequently Asked Question # 585 (May 1, 2018). In short, the GTSR do not automatically impose prohibitions on transactions involving any and all property of foreign entities that are less than 50 percent owned by blocked persons. *Id*.

There is no law that allows for or otherwise constructively blocks persons for purportedly being controlled by or operating or doing business on behalf of SDGTs, absent a specific designation of that person. Thus, a person can only be blocked under E.O. 13224 or the GTSR if it is specifically designated by the Secretary of the Treasury, the Secretary of State, OFAC, or if it is owned 50 percent or more by SDGTs.

The Government has failed to allege that Claimants are blocked under IEEPA, E.O. 13224, or the GTSR, or that they are owned 50 percent or more by SDGTs to meet the requirements of a constructive blocking under the GTSR or OFAC's 50 Percent Rule. Instead, the Government suggests that Claimants allegedly "share resources, finances, personnel, and other interests" with parties sanctioned under E.O. 13224 and IEEPA thereby renders them to be owned, controlled, or operated on behalf of those parties. Verified Complaint, ¶ 32, ECF No. 1. A non-sanctioned foreign

person's sharing of resources, finances, personnel, and other interests with a party blocked under IEEPA does not, however, render that non-sanctioned foreign person nor all of their transfers blocked, such that a processing of those transfers by U.S. persons constitutes an IEEPA violation. As noted above, an entity can be affiliated with or have a relationship with a blocked party, and not itself be blocked such that every transaction that the entity conducts would be blocked and in violation of IEEPA were it to cross into U.S. jurisdiction. *See* U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 402 (August 13, 2014). Therefore, even if the Court were to accept the Government's false allegation that Claimants conduct certain business "on behalf of SDGT Ovlas Trading SA and Kassim Tajideen," all transactions by Claimants still would not inherently violate IEEPA, given that the Claimants themselves are not designated or blocked.

In short, in order for the Government to have shown a violation of IEEPA in this case, it must have identified a specific blocked interest or a blocked party involved in the transactions at issue. 31 CFR § 594.201(a). The Government has not done so. Therefore, the Government's allegations as contained Verified Complaint do not satisfy Rule G's requirement that the Government "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f).

Furthermore, while courts accept all factual allegations in a complaint as true in considering a motion to dismiss, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), this rule is "inapplicable to legal conclusions." *Bigsby v. Barclays Capital Real Estate*, 170 F. Supp. 3d 568, 572 (S.D.N.Y. 2016). First, OFAC has not designated any of the Claimants as blocked for being owned by or controlled by SDGTs, nor has the Government alleged that the Claimants are owned 50 percent or more by SDGTs such that they would be constructively blocked. *See* 31

C.F.R. § 594.412. Thus, at a minimum, the Government's false conclusory statements that Claimants are owned or controlled by SDGTs does not meet the threshold for establishing ownership or control, such that Claimants and all transactions in which they have an interest are rendered blocked. Second, there is no legal authority to support the Government's suggestion that a foreign entity's alleged "shar[ing] resources, finances, personnel, and other interests" with SDGTs demonstrates ownership, control, or operation of those SDGTs such as to render the foreign entity and all of its transactions blocked under IEEPA. Thus, the Government has failed to demonstrate that Claimants' interests in the property are *per se* blocked under IEEPA, E.O. 13224, or the GTSR. Thus, at a minimum, the Government's false conclusory statements that Claimants are owned or controlled by SDGTs are not "sufficiently detailed" to satisfy Rule G's requirements.

Furthermore, the Government's argument that "'it is illegal for any U.S. person or entity to engage in any transaction' directly or 'with any undesignated third-party entity or person acting on behalf of the designated SDGT without first obtaining a license from OFAC'" is a construction of its own making and is not supported by law. Gov't Opp'n to Def.'s Mot. to Dismiss at 10. In fact, the Government cites only to its own Complaint for this false proposition, because it cannot point to any law, regulation, or judicial ruling for support. In reality, this proposition would only be true if there was an allegation that the SDGT had an interest in the specific activity or property involved in the violative transaction. As discussed in the section below, the Government's Complaint has failed to allege such facts.

The Government further seeks to support its position by noting that the GTSR prohibit "'any transaction or dealing in property or interests in property' of an SDGT, including but not limited to '[t]he making of any contribution of funds, goods, or services by, to, or for the benefit of,' an SDGT." *Id*. The Government however again does not allege any facts showing that any

Claimant is a SDGT, nor that any SDGT has an interest of any nature whatsoever in the specific Defendant Property. *See* 31 C.F.R. §§ 594.204, 594.306. Instead, the Government impermissibly casts its legal conclusions that Claimants are "owned by, controlled by, or operated for the benefit of, Kassim Tajideen and Ovlas Trading SA" as factual allegations. Gov't Opp'n to Def.'s Mot. to Dismiss at 11. This approach appears designed to obscure the fact that the Government has failed to allege that either Claimants are blocked under IEEPA or that Tajideen and Ovlas Trading have an interest in the specific Defendant Property or the transactions underlying its seizure. Accordingly, the Court need not accept these false legal conclusions as factual allegations. *See Marsoun v. United States*, 880 F. Supp. 2d at 59; *Bigsby v. Barclays Capital Real Estate*, 170 F. Supp. 3d at 568, 572.

Therefore, as the Government has not alleged any facts showing that Claimants are blocked under IEEPA, E.O. 13224 or the GTSR, Claimants' interest in the Defendant Property does not automatically render that property blocked by any IEEPA-based authority such that dealings by U.S. persons with respect to that property would violate IEEPA.

### B.   The Government Does Not Allege Facts Showing a Blocked Interest in the Defendant Property

Having failed to allege that Claimants are blocked parties, the Government also fails to allege any other blocked interest in the Defendant Property funds transfers themselves. As explained above, there are only two ways in which the funds transfers could violate IEEPA; either: (1) Claimants are blocked parties to the transactions, or (2) a blocked person has an interest in the specific transfers or property. Because, as established above, none of the Claimants are blocked, the transactions can violate IEEPA only if a blocked person has an interest in those specific funds transfers. The Government, however, has not alleged any facts showing that Kassim Tajideen, Ovlas Trading, or any other blocked party has an interest in those specific transfers.

Instead, the Government attempts to mischaracterize the relevant legal standards and requirements on dealing with property blocked under IEEPA by suggesting that Claimants allege that the transactions do not violate IEEPA because they "were not 'blocked' pursuant to IEEPA by the U.S. financial institutions that handled them." Gov't Opp'n to Def.'s Mot. to Dismiss at 11. Claimants, however, did not claim that U.S. financial institutions are the litmus test for whether a transfer of funds violates IEEPA. Rather, Claimants have simply described the legal ramifications and requirements related to handling transactions entering U.S. jurisdiction in which an IEEPA-blocked person maintains an interest. The fact that the Defendant Property has not been reported as blocked to OFAC and that it has continued to be dealt in demonstrates on its face that the Defendant Property does not contain the interest of a person blocked pursuant to IEEPA or OFAC's regulations—which are the relevant legal standards here.

If the funds transfers in this case did, in fact, implicate IEEPA due to an interest of SDGTs, then those transactions were blocked as a matter of law upon entering the United States, reporting to OFAC of those blocked transfers was legally mandated, and an across-the-board prohibition on transfers or dealings of any kind regarding the blocked property would be imposed. *See* U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 9 (September 10, 2002). In other words, if the funds were blocked because SDGTs had an interest in the them, then there could be no transfers or attempted transfers of that property absent authorization from OFAC. *See* 31 C.F.R. § 594.204 ("Except as otherwise authorized, no U.S. person may engage in any transaction or dealing in property or interests in property of persons whose property and interests in property are blocked"); *United States v. Holy Land Found. for Relief & Dev*., 722 F.3d 677, 686-87 (5th Cir. 2013) (explaining that the Government's pursuit of forfeiture of blocked property was valid because it first obtained a license from OFAC). Neither IEEPA, E.O. 13224, nor the

GTSR exempt activities of U.S. Government Agencies involving blocked property or interests in property of SDGTs from that prohibition, and the Government has not identified any specific license authorization from OFAC with respect to its dealings in the Defendant Property.

Further, under the GTSR any transfer "that is in violation of any provision of [the GTSR] or of any regulation, order, directive, ruling, instruction, or license issued pursuant to [the GTSR], and that involves any property or interest in property blocked pursuant to [the GTSR], is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or property interests." 31 C.F.R. § 594.202(a). Accordingly, any unlicensed transfer of property in the United States in which Kassim Tajideen and/or Ovlas Trading have any interest whatsoever is null and void. Additionally, "[e]xcept to the extent otherwise provided by law or unless licensed pursuant to [the GTSR], any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property in which on or since the effective date there existed an interest of a person whose property or interests in property are blocked pursuant to [the GTSR]." 31 C.F.R. § 594.202(e).

Therefore, even if the Court were to accept the Government's allegation that Kassim Tajideen and/or Ovlas Trading have interests in the Defendant Property, the Government's seizure of the *res* in this matter and the Government's attempt to seek its forfeiture are then invalid under the GTSR. In fact, the Government's forfeiture claim itself would be blocked as an interest in blocked property, and the Government would have transferred and held blocked property, all in violation of IEEPA.

**II.     Claimants' Motion to Dismiss Should Not Be Dismissed on Procedural Grounds.**

There are no procedural grounds that can alter the facts as pleaded by the Government in this matter nor rectify the consequential legal deficiencies in the Government's Complaint. Simply put, if there is no blocked interest present in the Defendant Property, then the underlying funds transfers cannot violate IEEPA and were unlawfully seized. If, as alleged, there is some blocked interest in the Defendant Property transactions, then the funds transfers were blocked as a matter of law at the moment they entered the United States, and any unlicensed dealings in them— including their seizure and attempted forfeiture by the Government—are prohibited by IEEPA and null and void under the GTSR.

The Government seeks to avoid these legal deficiencies with its Complaint by contending that Claimants have failed to file and serve a timely claim, and therefore lack standing to challenge the merits of the Complaint. Gov't Opp'n to Def.'s Mot. to Dismiss at 8. However, while the Government cites various cases explaining the requirements for compliance with Rule G, this Court has the discretion to excuse untimeliness where the Government would not be prejudiced. *See e.g.*, *United States v. Borromeo*, 945 F.2d 750, 754 (4th Cir. 1991) ("[T]he most important [consideration] is the degree of prejudice to the government."); *United States v. All Assets Held at Bank Julius*, 228 F. Supp. 3d 118, 126 (D.D.C. 2017) (excusing claimant's failure to file an answer to the amended complaint because, in doing so, the Government was not prejudiced); *United States v. One 2007 Mercedes Benz CLS*, Civil No.: WDQ-11-3390 at *5 (D. Md. Mar. 27, 2012) (explaining that "when the Government has 'not offer[ed] even a hint of an insinuation' of prejudice, the Court should not deny a hearing on the merits of the claim"); *United States v. $12,914 in U.S. Currency*, 828 F.Supp.2d 822-25 (D. Md. 2011) (denying motion to strike because,

*inter alia*, "the Government ha[d] not alleged any prejudice" from the claimant's delay in filing an answer).

Additionally, as this Court explained in a matter related to this one, "[a]lthough some courts demand strict compliance with the procedural requirements of Rule G…numerous courts interpret pleadings and procedural practices under the Supplemental Rules liberally enough to allow for an appropriate degree of discretion in cases where the underlying goals of Rule C(6)[2][1] are not frustrated to ensure that courts decide controversies on the merits.'" *United States of America v. Three Sums Totaling $241,386.58 in Seized United States Currency*, Case No. 18-CV-750, Order on Mot. for Leave to File (D.D.C. Sept. 3, 2019) (citing *United States v. Funds from Prudential Secs.*, 300 F. Supp. 2d 99, 104 (D.D.C. 2004)). When "a claimant has made a sufficient showing of interest in the property through filing with the court a motion and accompanying affidavits, technical noncompliance with the procedural rules governing the filing of claims may be excused." *See United States v. United States Currency in the Amount of $2,857.00*, 754 F.2d 208, 213 (7th Cir. 1985). Courts have also accepted Claimants' mechanism of filing a verified claim. Indeed, in *United States v. Eighty-Two Thousand Three Hundred Dollars in U.S. Currency*, claimant's service on the government of a signed and sworn affidavit attached to his motion to dismiss that identified and explained his interest in the claimed property was accepted. 2:18-cv-11848 at *10 (E.D. Mich. Mar. 11, 2019) ("While the affidavit was filed as an exhibit to Claimant's motion to dismiss, and not identified as a verified claim as such, it meets Supplemental Rule G's requirements for verified claims.").

---

[1] "Case law pre-dating the 2006 adoption of [ ] Rule G often refers to the procedural requirements in [ ] Rule C(6), 'which governed claim procedure prior to [ ] Rule G's adoption.'" *United States v. 2007 Chrysler 300 Touring VIN:2C3KA53G27H883668*, No. CIV 10-0246 JB WDS, 2011 WL 1119701, at *3 n.1 (D.N.M. Mar. 10, 2011) (quoting *United States v. One Men's Rolex Pearl Master Watch*, 357 F. App'x 624, 626 n.2 (6th Cir. 2009)).

Moreover, permitting Claimants to proceed on the merits will not prejudice the Government, nor has the Government even argued that it would be prejudiced. The substantive issues in this case are nearly identical to those that have been argued in the related matter that is pending before this Court in *United States of America v. Three Sums Totaling $241,386.58 in Seized United States Currency*, Case No. 18-CV-750 (D.D.C. Apr. 3, 2018). Both cases present nearly identical legal issues and arguments, and both complaints fail to state a claim under IEEPA and the GTSR upon which relief can be granted. Further, both cases also alleged the involvement of same SDGTs, and similarly did not allege any facts necessary to show that either the respective Claimants or the respective funds transfers involved interests blocked pursuant to IEEPA or violations of IEEPA. Moreover, Claimants' claims to the Defendant Property in both cases are made genuinely and in good faith, as set forth in the Verified Claims filed in the matters.

Further, and with respect to the timeliness of a claim, the requirement that a claimant file a timely verified statement serves two purposes. First, it forces claimants "to come forward as quickly as possible after the initiation of forfeiture proceedings, so that the court may hear all interested parties and resolve the dispute without delay." *United States v. $487,825.00 in U.S. Currency*, 484 F.3d 662, 665 (3d Cir. 2007) (citing *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d at 150 n. 9 (3d Cir. 2003) (internal quotation marks omitted). Second, it "minimize[s] the danger of false claims by requiring claims to be verified or solemnly affirmed." *Id*. Neither purpose is frustrated by Claimants' filing in this matter. The Court can resolve this dispute without delay even if it considers the Claimants' Motion to Dismiss, because the Court is already familiar with the issues and arguments presented. The nearly identical civil forfeiture proceedings before this Court involve similar claimants and issues, as well as similar legal arguments by the parties. Furthermore, Claimants' Motion to Dismiss does not present any

likelihood of false claims because Claimants simultaneously filed a Verified Claim that adequately identifies Claimants' interests. Fed. R. Civ. P. Supp. G(5). Additionally, should the Court find Claimants' Verified Claim in this case to be untimely, such a procedural deficiency could readily be cured by permitting Claimants to motion for leave to file a Verified Claim to the Defendant Property.

Likewise, courts have allowed untimely motions made under Rule 12(b)(6) to be treated as motions under Rule 12(c), which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The court in *Nichols v. Young* explained that "the standard of review under [Rule 12(b)(6) and Rule 12(c)] is identical," and that "the sole difference is that a Rule 12(b)(6) motion is the proper vehicle for challenging the legal sufficiency of a complaint before the defendant has answered, and a Rule 12(c) motion is the proper vehicle to raise such a challenge after the defendant has answered." 248 F. Supp. 3d 1, 6 (D.D.C. 2017); see, e.g., *Vanderhorst v. Blue Cross Blue Shield Ass'n*, 99 F.Supp.3d 46, 48–49 (D.D.C. 2015). The Court in *Jung v. Association of American Medical Colleges* reasoned that "[n]o prejudice to any party results from treating a Rule 12(c) motion as a Rule 12(b)(6) motion because the standard of review for motions for judgment on the pleadings under Rule 12(c)…is essentially the same as that for motions to dismiss under Rule 12(b)(6)." *Jung v. Association of American Medical Colleges*, 339 F. Supp. 2d 26, 35-36 (D.D.C. 2004). Further, even if the Court finds that Claimants' Motion to Dismiss should have been a Rule 12(c) Motion, no prejudice would result from its considering Claimants' 12(b)(6) motion instead as a Rule 12(c) motion. Accordingly, Claimants' respectfully request that this Court consider their Rule 12(b)(6) either as submitted or as a Rule 12(c) motion in light of this Circuit's "'strong policies favoring the resolution of genuine disputes on their merits.'" *Jackson v. Beech*, 636 F.2d at 835.

Finally, if there is any procedural error that resolves Claimants' motion it is the Government's untimely Opposition to Claimants' Motion to Dismiss. Claimants' Motion to Dismiss was filed on May 4, 2020, and, pursuant to the United States District Court for the District of Columbia's Local Rules ("D.D.C. Local Rules"), "[w]ithin 14 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion." D.D.C. LCvR7(b). The Government, however, did not file its Motion to Strike and Response in Opposition to Motion to Dismiss until twenty-one days later, on May 25, 2020. Accordingly, under the D.D.C. Local Rules, "[i]f such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded." *Id*. The Government has not sought leave or shown good cause for its untimely opposition to Claimants' Motion to Dismiss, nor did it seek an extension of the filing date. The Government should therefore be determined to have conceded to Claimants' Motion to Dismiss.

## CONCLUSION

This case presents nearly identical substantive legal issues to those presented in another case before this Court—namely, the Government's failure to state claims under IEEPA and the GTSR upon which relief can be granted. The Government in both cases has simply not shown that the Defendant Property transactions at issue violate U.S. law. None of the funds transfers involved a blocked party, nor did a blocked person have any interest in the specific transfers. Accordingly, the Government is seeking forfeiture of large sums of money on an unprecedented and novel legal theory that simply because a sanctioned party is alleged to have a relationship with a party to a transaction, that any transaction of that party necessarily violates U.S. law. This claim is not supported by IEEPA, OFAC's regulations, nor jurisprudence, and seeks to radically and impermissibly expand the Government's authority. Therefore, Claimants respectfully ask this

Court to grant its Motion to Dismiss the Government's Complaint for forfeiture *in rem*, and to deny Plaintiff's Motion to Strike.


Dated:  June 1, 2020

<div style="margin-left:40%">

Respectfully submitted,
/s/ Erich C. Ferrari, Esq.
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
DC Bar No. 978253

*Attorney for Claimants*

</div>