UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> THREE SUMS TOTALING $612,168.23 IN SEIZED UNITED STATES CURRENCY , <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 19-130 (RBW)

**MEMORANDUM OPINION**

The plaintiff, the United States of America (the "government"), brings this civil forfeiture action in rem against the defendant property, three sums totaling $612,168.23 in seized United States currency (the "defendant funds"). This action arises out of an investigation of a money laundering scheme designed to use the United States banking system to evade sanctions under the International Emergency Economic Powers Act of 1977 (the "Act"), 50 U.S.C. §§ 1701–1706. See Memorandum of Law in Support of Plaintiff's Motion for Entry of Default Judgment and Order of Forfeiture ("Gov't's Mem.") at 1, ECF No. 12-1; Verified Complaint for Forfeiture In Rem ("Compl.") at 1–2, ECF No. 1. Contesting this action are AJC Trading FZC, SRG Industries (Ghana) Ltd., and Ramani Distribution Company, Ltd. (collectively, the "claimants"), which are entities that purport to "maintain[] a bona fide interest in the [d]efendant [funds]." Memorandum of Law in Support of Claimants AJC Trading FZC, SRG Industries (Ghana) Ltd., and Ramani Distribution Company, LTD.'s Motion to Dismiss the Verified Complaint for Forfeiture In Rem at 1, ECF No. 14-1. Currently pending before the Court are (1) the Plaintiff's

Motion for Entry of [a] Default Judgment and Order of Forfeiture (the "government's motion for a default judgment" or "Gov't's Mot."), ECF No. 12; the Claimants AJC Trading FZC, SRG Industries (Ghana) Ltd., and Ramani Distribution Company, Ltd.'s Motion to Dismiss the Verified Complaint for Forfeiture In Rem ("Claimants' Mot."), ECF No. 14; and (3) the Plaintiff's Motion to Strike and Response in Opposition to Motion to Dismiss (the "government's motion to strike" or "Gov't's Mot. to Strike"), ECF No. 18.  Upon careful consideration of the parties' submissions,[1] the Court concludes that it must grant the government's motions to strike and for a default judgment and order the forfeiture of the defendant funds to the government.

### I. BACKGROUND

The government's Complaint concerns "United States currency involved in and traceable to violations of the [Act], 50 U.S.C. §§ 1701–1706, as well as the Money Laundering Control Act of 1986, 18 U.S.C. §§ 1956(a)(2)(A) and 1956(h)"  Compl. ¶ 1.  The following funds constitute the defendants in rem:

    a.    the sum of $229,203.38 in United States currency, plus accrued interest, formerly located at Citibank N.A., seized on or about August 14, 2017, and assigned an asset identification number ending in 5264 by the U.S. Department of Justice, ([ ] "SUM A");

    b.    the sum of $22,964.85 in United States currency, plus accrued interest, formerly located at Soci[é]t[é] G[é]n[é]rale (New York), seized on or about November 20, 2017, and assigned an asset identification number ending in 6594 by the U.S. Department of Justice ([ ] "SUM B")[; and]

    c.    the sum of $360,000.00 in United States currency, plus accrued interest, formerly located at Citibank N.A., seized on or about November 20, 2017, and assigned an

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Memorandum of Law in Support of Motion to Strike and Response in Opposition to Motion to Dismiss ("Gov't's Strike Mem."), ECF No. 18-1; and (2) the Claimants AJC Trading FZC, SRG Industries (Ghana) Ltd., and Ramani Distribution Company, Ltd.'s Reply Memorandum of Law in Support of Their Motion to Dismiss the Verified Complaint for Forfeiture In Rem, and in Opposition to Plaintiff's Motion to Strike ("Claimants' Opp'n"), ECF No. 20.

2

asset identification number ending in 7468 by the U.S. Department of Justice ([ ] "SUM C").

Id. ¶ 4.

On May 27, 2009, the United States Department of the Treasury's Office of Foreign Assets Control (the "OFAC") "designated Kassim Tajideen ['Tajideen'] as a[] [Specially Designated Global Terrorist ('SDGT')] pursuant to [the Act] and Executive Order 13224[2] based on his significant financial support of the Hizbollah terrorist organization."[3]  Id. ¶ 21.  Also on December 9, 2010, the OFAC "designated, among others, . . . six companies[, including Ovlas Trading, SA,] as SDGTs . . . pursuant to [the Act] and Executive Order 13224 . . . after being identified as being owned by, controlled by, or operated for the benefit of, the OFAC-designated Tajideen [ ]."  Id. ¶ 22.  "At all times since their designation date until [the date of the Complaint], all of these entities have remained SDGTs."  Id.  "Since the time of these designations by the OFAC, which are published in the Federal Register and online, all assets of the SDGTs under U.S. jurisdiction have been blocked as a matter of law."  Gov't's Mem. at 3.  The government alleges that the claimants in this case—AJC Trading FZC ("AJC"), SRG Industries (Ghana) Ltd., ("SRG")  and Ramani Distribution Company, Ltd. ("Ramani")—"are entities owned by, controlled by or operated for the benefit of [the SDGT-designated] Tajideen and Ovlas Trading, SA."  Id. ¶ 29.

**A.  The Criminal Case Against Kassim Tajideen**

The criminal scheme involving Tajideen, his designation as an SDGT, and the forfeiture

---

[2] Executive Order No. 13,224, 66 Fed.Reg. 49,079, "describe[s] the types of conduct that could subject an entity to blocking of its assets, such as providing financial support to terrorists . . . and authorized the designat[ion of] additional entities . . . determine[d to be] within the purview of the Order."  Islamic Am. Relief Agency v. Gonzales, 477 F.3d 728, 734–35 (D.C. Cir. 2007).

[3] On December 9, 2010, the OFAC "designated [ ] Tajideen's brother, Husayn Tajideen as an SDGT for the same reasons[, and a]t all times since their respective designation dates until [the date of the Complaint], both individuals have remained SDGTs."  Compl. ¶ 22.

claims against Tajideen's assets are not new to this Court.  On March 7, 2017, a grand jury issued an Indictment charging Tajideen and a codefendant with one count of conspiracy to violate the Act and the Global Terrorism Sanctions Regulations, 31 C.F.R. pt. 594, as well as multiple counts of unlawful transactions with an SGDT and one count of conspiracy to commit money laundering.  See generally Indictment, United States v. Tajideen, Crim. Action No. 17-46 (D.D.C. Mar. 7, 2017) (the "Indictment"), ECF No. 1.  "[O]n March 25, 2017, agents of [United States] Drug Enforcement Agency transported [Tajideen] to the United States," in order to execute Tajideen's extradition.  Defendant Kassim Tajideen's Motion to Dismiss No. 7 As to Superseding Indictment at 5, United States v. Tajideen, Crim. Action No. 17-46 (D.D.C. Mar. 16, 2018), ECF No. 116.  On February 15, 2018, a grand jury issued a Superseding Indictment, which charged Tajideen with one count of conspiracy to conduct unlawful transactions and cause United States persons to conduct unlawful transactions with an SGDT and to defraud the United States by dishonest means, as well as the unlawful transactions and money laundering counts.  See generally Superseding Indictment, United States v. Tajideen, Crim. Action No. 17-46 (D.D.C. Feb. 15, 2018) (the "Superseding Indictment"), ECF No. 89.  Both the original Indictment and the Superseding Indictment included forfeiture counts.  See Indictment at 26; Superseding Indictment at 25.  As this Court previously explained:

> In short, the defendant is charged with allegedly "continu[ing] to conduct business with [United States] entities through a large network of businesses with ever-changing names run by a relatively small group of personnel, effectively hiding his own involvement in the transactions," despite his designation as an SDGT by the [OFAC].

United States v. Tajideen, No. CR 17-46, 2018 WL 1342475, at *1 (D.D.C. Mar. 15, 2018) (first and second alterations in original, aff'd, 724 F. App'x 6 (D.C. Cir. 2018).

Tajideen pleaded guilty to conspiracy to commit money laundering and was sentenced to

a sixty-month term of incarceration, with all other counts being "dismissed on the motion of the United States."[4]  Judgment at 1–2, United States v. Tajideen, Crim. Action No. 17-46 (D.D.C. Aug. 12, 2019) (the "Judgment"), ECF No. 251.  As part of his guilty plea agreement, Tajideen agreed to a forfeiture to the government in the form a "a money judgment of $50,000,000.00.".  Id. at 6.  According to the Statement of Facts, which Tajideen agreed was accurate when he entered his guilty plea, Tajideen

> acknowledge[d] that . . . his [SDGT] designation by [the] OFAC, and the prohibitions on transactions attendant to it under the [Act] and other regulations, were in full force during the period of the conspiracy period . . . , and, that other laws made it unlawful for any person to violate, attempt to violate, conspire to violate, or cause a violation of these prohibitions.

Statement of Facts at 2, United States v. Tajideen, Crim. Action No. 17-46 (RBW) (D.D.C. Dec. 6, 2018) (the "Statement of Facts"), ECF No. 214.  Furthermore, the Statement of Facts indicates that Tajideen and his co-conspirators engaged in a plethora of transactions, see id. at 3–4, including wire transfers—at least similar to those alleged in this forfeiture action—of "as much as $1 billion through the United States financial system from places outside the United States," Id. at 4.

**B.  The Government's Forfeiture Allegations**

"Pursuant to a seizure warrant issued by this Court[,]" the defendant funds "were seized in the Southern District of New York and then transferred to the possession and custody of the United States Marshals Service . . . , where they remain."  Compl. ¶ 5.  The government makes three claims in support of its forfeiture demand regarding these funds based on the traceability of the funds to (1) specified violations under the Act, see id. ¶¶ 52–56; (2) a conspiracy to violate

---

[4] On June 4, 2020, the Court amended its Judgment to modify Tajideen's prison sentence to the time he had already served.  Amended Judgment, United States v. Tajideen, Crim. Action No. 17-46 (D.D.C. Jun. 4, 2020), ECF No. 266.

5

the Act, see id. ¶¶ 57–61, and (3) international money laundering, see id. ¶¶ 62–66.  According to the government, "SUM A, SUM B, and SUM C were seized pursuant to a warrant issued by this Court because these funds were forfeitable as being derived from, and consisting of, unlicensed financial transactions that benefitted SDGTs."  Gov't's Mem. at 5.  "At the time of [its] seizure, SUM A consisted of an attempted wire transfer of funds between a Double Gamma (Ghana) Limited ([ ] "Double Gamma") account ending in 0306 at GCB Bank in Ghana, and an AJC . . . account ending in 3702 at Emirates Islamic Bank in the United Arab Emirates."  Compl. ¶ 6.  "At the time of [its] seizure, SUM B consisted of an attempted wire transfer of funds between an SRG . . . account ending in 6230 at Standard Trust Bank in Ghana, and a[] Soci[é]t[é p]our [l]e Compoundage en Côte [d]'Ivoire ([ ] 'SCCI') account ending in 5992 at Soci[é]t[é] G[é]n[é]rale in [the] Ivory Coast.'"  Id. ¶ 7.  And, "[a]t the time of [its] seizure, SUM C consisted of an attempted wire transfer of funds between a Ramani Distribution Company, Ltd. (hereafter, "Ramani") account ending in 4881 at Access Bank GH Ltd in Ghana, and a Kien Giang Import and Export ([ ] 'Kien') account ending in 4013 at Joint Stock Commercial Bank for Development and Investment in Vietnam."  Id. ¶ 8.  "SUM A and SUM C were seized from Citibank N.A. while involved in interbank transfers that transited through the United States[, and] . . . SUM B was seized from Soci[é]t[é] G[é]n[é]rale (New York) while involved in interbank transfers that transited through the United States."  Id. ¶¶ 38–39.

**C. Proceedings Before the Court in this Case**

On January 18, 2019, the government filed this civil forfeiture action against the defendant funds.  See Compl. at 1.  On January 24, 2019, the Clerk of the Court issued a warrant for arrest in rem of the defendant funds.  See Warrant for Arrest In Rem  (Jan. 24, 2019) ("Warrant"), ECF No. 6.  Then, beginning on January 31, 2019, the government published notice

6

of this action on its public forfeiture website, www.forfeiture.gov, for at least thirty consecutive days. See Declaration of Publication ("Publication Decl."), ECF No 7. Additionally, "[o]n or about February 8, 2019, the government served notice [of this action] on the [eleven] known potential claimants," Plaintiff's Request for Clerk's Default and Affidavit in Support of Default ("Default Aff.") ¶ 5, ECF No. 9, including the three putative claimants in this case, see Gov't's Mem. at 7. Thereafter, on April 8, 2020, the government moved for "ent[ry of a d]efault against the defendant propert[y] and all parties that might have an interest in it[,]" Default Aff. ¶ 8, which the Clerk of the Court granted on April 9, 2020, see Default at 1 (Apr. 9, 2020), ECF No. 11. On this same date, the government then filed its motion for a default judgment. See Gov't's Mot. at 1.

On April 20, 2020, an appearance was entered by the plaintiff's counsel. See Appearance of Counsel at 1, ECF No. 13. Subsequently, on May 4, 2020, these claimants—AJC, SRG, and Ramani—filed their motion to dismiss the government's Complaint. See generally Claimants' Mot. In response, on May 25, 2020, the government filed its motion to strike the claimants' motion to dismiss. The motion to strike and motion to dismiss, as well as the underlying motion for a default judgment, are the subject of this memorandum opinion.

## II.     STANDARDS OF REVIEW[5]

### A. Motion to Strike

A court, either on its own volition or at the request of a moving party, may generally strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Granting a motion to strike is a "'drastic remed[y] that courts disfavor,'" but trial judges have discretion to either grant or deny such motion.

---

[5] Because the Court ultimately concludes that the claimants' motion to dismiss must be stricken, it will not set forth the standards of review applicable to motions to dismiss.

Riddick v. Holland, 134 F. Supp. 3d 281, 285 (D.D.C. 2015) (quoting United States ex rel. Landis v. Tailwind Sports Corp., 308 F.R.D. 1, 4 (D.D.C. 2015)). Rule 12(f) itself does not require the striking of prejudicial matters, and although courts disfavor motions to strike, courts have granted such motions upon a showing that parts of a pleading "are prejudicial or scandalous." Nwachukwu v. Rooney, 362 F.Supp.2d 183, 190 (D.D.C. 2005). Therefore, "absent a 'strong reason for so doing,' courts will generally 'not tamper with pleadings.'" Nwachukwu v. Rooney, 362 F. Supp. 2d 183, 190 (D.D.C. 2005) (quoting Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976)).

**B. Default Judgment**

Federal Rule of Civil Procedure 55 sets forth a two-step process for a party seeking a default judgment. Fed. R. Civ. P. 55. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, following the entry of a default, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Despite a plaintiff's ability to acquire a judgment by default, there are "strong policies favoring the resolution of genuine disputes on their merits[.]" Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980); see Peak v. District of Columbia, 236 F.R.D. 13, 15 (D.D.C. 2006) (acknowledging the inherent unfairness of awarding a judgment against a party for mere filing delays). Therefore, a "default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." Jackson, 636 F.2d at 836 (quoting H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970)); see Teamsters Local 639–Emp's. Health Tr. v. Boiler & Furnace Cleaners, Inc., 571 F. Supp. 2d 101, 107 (D.D.C. 2008) (Walton, J.) ("[W]hen the

8

adversary process has been halted because of an essentially unresponsive party[,] the diligent party must be protected lest [they] be faced with interminable delay and continued uncertainty as to [their] rights." (second alteration in original) (quoting Peak, 236 F.R.D. at 15)).

"The determination of whether [a] default judgment is appropriate is committed to the discretion of the trial court." Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC, 531 F. Supp. 2d 56, 57 (D.D.C. 2008). The prior entry of a "default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011); see Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("A defaulting defendant is deemed to admit every well-pleaded allegation in the complaint."). However, in conjunction with the issuance of a default judgment, "the Court must 'make an independent determination of the sum to be awarded' pursuant to the judgment 'unless the amount of damages is certain.'" Boland v. Yoccabel Constr. Co., 293 F.R.D. 13, 17 (D.D.C. 2013) (Walton, J.) (quoting Adkins, 180 F. Supp. 2d at 17). Therefore, "'plaintiff[s] must prove [their] entitlement to the amount of monetary damages requested' using 'detailed affidavits or documentary evidence' on which the court may rely." Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014) (quoting Fanning v. Permanent Sol. Indus., Inc., 257 F.R.D. 4, 7 (D.D.C. 2009)).

### III.    ANALYSIS

**A. The Government's Motion to Strike the Claimants' Motion to Dismiss**

The government requests that the Court "strike or deny the [claimants'] motion [to dismiss] because the movants lack standing to be heard by the [C]ourt in this matter." Gov't's Mot. to Strike at 1. According to the government, the claimants' putative claim is defective in two ways. First, "the [claimants] failed to serve the putative claim upon the government as

9

required by Supp[lemental] Rule G(5)(a)(i)(D) [of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the 'Supplemental Rules')]." Gov't's Strike Mem. at 7.  Second, the government argues that "the [claimants'] purported claim is woefully outside the bounds of timeliness." Id.  The claimants respond that the government's motion to strike should be denied because "[t]here are no procedural grounds that can alter the facts as pleaded by the [g]overnment in this matter nor rectify the consequential legal deficiencies in the [g]overnment's Complaint." Claimants' Opp'n at 15.  However, the claimants do not contend that they, in fact, did timely bring and properly serve their putative claim, nor do they provide an explanation for this delay.  See generally Claimants' Opp'n.

Putative claimants seeking to contest the forfeiture of property that has been named as a defendant in a civil forfeiture action must proceed "in the manner set forth in the Supplemental Rules . . . ." 18 U.S.C. § 983(a)(4)(A).  Under Rule G of the Supplemental Rules ("Supplemental Rule G"), a would-be claimant must file with the court presiding over a forfeiture action a claim that (1) "identif[ies] the specific property claimed," (2) "identif[ies] the claimant and state[s] the claimant's interest in the property," (3) contains a signature "by the claimant under penalty of perjury," and (4) has been served "on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D)." Supplemental Rule ("Supp. R.") G(5)(a)(i).  The claim must be filed either thirty days following receipt of direct notice of the forfeiture or sixty days from notice by publication.  See Supp. R. G(5)(a)(ii).  The putative claimant must also file either a Rule 12 motion to dismiss or an answer within 21 days of filing a verified claim.  Supp. R. G(5)(b).  Should the putative claimant fail to comply with these requirements, the government "may move to strike [the] claim . . . ." See Supp. R. G(8)(c)(i).

The government correctly notes, and the claimants do not dispute, see generally Claimants' Opp'n, that the filing of the putative claim was untimely. "Because the procedures prescribed by the Supplemental Rules play an important role in structuring forfeiture suits and ensuring that they proceed efficiently, a court is authorized to strike the claim [ ]or answer of any claimant who fails to follow the Rules' procedural dictates." United States v. All Assets Held at Bank Julius Baer & Co., 664 F. Supp. 2d 97, 101 (D.D.C. 2009).  Courts generally expect claimants to adhere strictly to those requirements." Id. (citing United States v. $83,686.00, 498 F. Supp. 2d 21, 24 (D.D.C. 2007)).

Holding the claimants to strict adherence to the Supplemental Rules compels the Court to conclude that the claimants have failed to properly bring their putative claim in this action. As described previously, the Complaint was filed on January 18, 2019. See Compl. at 1. The government provided published notice of the proposed forfeiture on January 31, 2019 and provided direct notice to potential claimants on February 8, 2019. See Default Aff. at 2. It was not until April 20, 2020, when counsel entered an appearance on behalf of AJC, that there was any indication that a claim might be made, see Appearance of Counsel at 1, and it was not until even later, on May 4, 2020, that the claimants finally filed their collective motion to dismiss with their Verified Claim included as an attachment, see Claimants' Mot. at 1. Furthermore, the government represents, without protest from the claimants, that "the [claimants] and their counsel received actual notice of the instant civil in rem action on January 18, 2019, when this case's docket was electronically linked via CM/ECF to the docket of [United States]. v. Three Sums Totaling $241,386.58, et al., a related matter involving the movants and their same legal counsel." Gov't's Strike Mem. at 8. Thus, the delay before the filing of the claim was well-beyond when the filing of the claim would have been timely.

11

Despite the claimants' failure to timely file their motion to dismiss, they now ask the Court to "excuse [this] untimeliness" because "the [g]overnment would not be prejudiced" and the purposes of timely filing a verified claim would not be "frustrated by [the c]laimants' filing in this matter." Claimants' Opp'n at 15–16. The Court recognizes that it "may excuse some minor procedural failings so long as 'the underlying goals of' the Supplemental Rules 'are not frustrated.'" All Assets Held at Bank Julius Baer & Co., 664 F. Supp. 2d at 102 (quoting United States v. Funds from Prudential Securities, 300 F.Supp.2d 99, 104 (D.D.C.2004)). Indeed the Court may consider a number of factors, including lack of prejudice to the government, in assessing whether to exercise its discretion to excuse non-compliance with the Supplemental Rules. See United States v. One 1990 Mercedes Benz 300CE VIN WDBA51E8LB183486, 926 F. Supp. 1, 4 (D.D.C.1996) (describing the many factors courts consider in determining whether untimeliness should ultimately bar a claim, including "whether the government would be prejudiced by allowing the late filing"). Here, given the claimant's considerable delay in filing their putative claim, as well as the failure to provide a justifiable explanation for this this delay, the Court cannot excuse the claimants' lapse. While a delay as brief as a few months may "[i]n the scheme of a civil lawsuit, [ ] present[], at worst, a modest increase in the length of the litigation," United States v. $229.590.00 in U.S. Currency Seized from a Safe in the Home of Dallas Cty. Comm'r Price, No. 3:12-CV-0893-D, 2013 WL 625742, at *3 (N.D. Tex. Feb. 20, 2013), the delay here, which extended for more than a year, has invariably disrupted the expeditious litigation of this case. During the period of the delay, the government requested a default, the Clerk of the Court entered the default, and a final motion for default judgment was pending all before the claimants—despite any alleged deficiency in notice—took action to make their claim known. The Court must therefore conclude that the government has been prejudiced

12

because only now have the "claimant[s] come out of the woodwork after the time of filing claims . . . has elapsed, thereby disrupting the normal course and progress of the proceedings." Id.[6] To rule otherwise would effectively undermine the commands of the Supplemental Rules without any reason for doing so.

Accordingly, the government's motion to strike must be granted and, pursuant to Supplemental Rule G(8)(c), the claimants' claim is stricken.

## B. The Government's Motion for a Default Judgment

Having stricken the claimants' motion to dismiss, the Court will now address the government's motion for a default judgment. The government argues that it is entitled to a default judgment against the defendant funds based "upon consideration of the record in this case, including a showing of compliance with applicable rules regarding service of process and notice by publication, and the default having been entered by the Clerk of the Court[.]" Gov't's Mem. at 9. "As grounds for its motion, [the government] cites 18 U.S.C. § 983(a)(4)(A), Fed. R. Civ. P. 55, and [Supplemental] Rule G." Gov't's Mot at 1. For the following reasons, the Court agrees that the government is entitled to a default judgment against the defendant funds and that they are properly subject to forfeiture to the government.

---

[6] The claimants make final attempts to sway the Court by asking it to consider their motion to dismiss under Federal Rule of Civil Procedure 12(c) and requesting that the Court deem their motion to dismiss conceded because the government filed its response to that motion seven days late. See Claimants' Opp'n at 17–18. But motions under Rule 12(c) concern motions made after the time for the filing of pleadings has been closed and motions filed under it "require the court to consider and decide the merits of the case, on the assumption that the pleadings demonstrate that there are no meaningful disputes as to the facts such that the complaint's claims are ripe to be resolved at this very early stage in the litigation[,]" Murphy v. Dep't of the Air Force, 326 F.R.D. 47, 49 (D.D.C. 2018), and that is not the case here. Moreover, the government's comparatively slight delay is more readily explainable and excusable. First, the untimely filing by the claimants came at such a time that their sudden entrance in the case could have reasonably gone unnoticed or without sufficient preparation by the government. Second, the government's delay of one week ultimately caused no disruption in these proceedings, unlike the claimant's much more untimely filings. Accordingly, the Court disagrees with the claimants that their motion should be considered under Rule 12(c) and that the government conceded their motion to dismiss.

### 1. Procedural Prerequisites for Forfeiture in Rem

Supplemental Rule G "governs [] forfeiture action[s] in rem arising from a federal statute." Supp. R. G(1). Relevant here, Rule G requires the government to (1) file a verified complaint, Supp. R. G(2)(a) that, inter alia, "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial[,]" Supp. R. G(2)(f); (2) "publish[] notice of the action within a reasonable time after filing the complaint[,]" Supp. R. G(4)(a)(i), which may be done by "posting a notice on an official internet government forfeiture site for at least [thirty] consecutive days[,]" Supp. R. G(4)(iv)(C); and (3) "send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government[,]" Supp. R. G(4)(b)(i), "by means reasonably calculated to reach the potential claimant[,]" Supp. R. G(4)(b)(i), (iii)(A). Rule G also provides that "the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control[.]" Supp. R. G(3)(b)(i).

Here, the Court concludes that the government has demonstrated that the applicable requirements of Supplemental Rule G have been satisfied. First, the government filed a verified complaint satisfying the requirements of Supplemental Rule G(2), see Compl.; Supp. R. G(2),[7] and, the Clerk of the Court issued a warrant to arrest the property in accordance with Supplemental Rule G(3), see Warrant; Supp. R. G(3)(b)(i). Then, on January 31, 2019, within a reasonable time after filing its complaint, the government published notice of this action on

---

[7] Supplemental Rule G(2) provides that "[t]he complaint must: (a) be verified; (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action [wa]s filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. Rule G(2). Based on its review of the government's Complaint, the Court finds that the Complaint satisfies each of these requirements.

www.forfeiture.gov, an official government forfeiture website, for thirty consecutive days in accordance with Supplemental Rule G(4)(a).  See Default Aff. ¶ 6; Supp. R. G(4)(a)(i), (iv)(C).[8]  At approximately the same time, the government, in accordance with Rule G(4)(b), sent notice of this action and a copy of its Complaint to "Taijdeen, Ovlas Trading SA, Congo Futur, Ali Jaber, Hussein Jaber, AJC, Double Gamma, SRG, SCCI, Ramani, and Kien."  Gov't's Mem. at 7.  These individuals and entities were allegedly part of the transfers "involved in and traceable to violations of the [Act], 50 U.S.C. §§ 1701[–]1706, [and] the Money Laundering Control Act of 1986, 18 U.S.C. §§ 1956(a)(2)(A) and 1956(h)," Compl. ¶ 1, see id. ¶¶ 6–8.

Moreover, the Court concludes that the notices sent by the government to the potential claimants were "sent by means reasonably calculated to reach the potential claimant[s]" as required by Supplemental Rule G(4)(b).  Supp. R. G(4)(b)(iii)(A).  Moreover, the government represents that it not only sent adequate notice, see Default Aff. ¶¶ 5, 6; Gov't's Mem. at 6–7, but that

> a London-based attorney contacted the [government] on behalf of Hussein Jaber, SRG, Double Gamma, and Ramani . . . [and] sought return of SUM A, SUM B, and SUM C[, and] [a]fter receiving notice of the [ ] Complaint, the same attorney contacted the [government] on behalf of the same clients and was advised . . . to file the appropriate judicial claim and answer[,]

Gov't's Mem. at 8.  Therefore, at least some potential claimants actually received the government's notice.  And while these efforts to notify potential claimants of this action did not produce timely filings by them, the notices were sufficient to satisfy Supplemental Rule G(4)(b),

---

[8] Supplemental Rule G(4)(a) provides that the "notice must: (A) describe the property with reasonable particularity; (B) state the times under [Supplemental] Rule G(5) to file a claim and to answer; and (C) name the government attorney to be served with the claim and answer."  Supp. R. G(4)(a)(ii).  The government's notice satisfied each of these requirements.  See Publication Decl., Attach. 1 (Notice of Forfeiture Action) at 1 (describing the property and providing that "[a]ny person claiming a legal interest in the [ ] [p]roperty must file a verified [c]laim with the court within [sixty] days from the first day of publication (January 31, 2019) of this Notice . . . and an [a]nswer to the complaint . . . within [twenty-one] days thereafter[,]" and "[t]he verified [c]laim and [a]nswer must be . . . served upon Trial Attorney Kathleen Robeson, 1400 New York Avenue, NW, Suite 10100, Washington, DC 20530").

given the government's concurrent effort to notify the public at large by posting notice of this action on its official forfeiture website.  See United States v. Funds up to & Including the Amount of $56,634 in U.S. Currency on Deposit in Banesco Int'l, Pan., Account # 201000274785, Titled in the Name of Inversiones Cedeno C.A., and/or Prop. Traceable Thereto, 79 F. Supp. 3d 112, 114 (D.D.C. 2015) (concluding that multiple unsuccessful attempts to obtain contact information for potential claimant were sufficient to satisfy Supplemental Rule G(4)(b), given, inter alia that the government posted notice on its public forfeiture website); see also Hammel v. U.S. Dep't of Justice, Civ. Action No. 12-2932, 2013 WL 1363861, at *3 (D.S.C. Apr. 3, 2013) (citing "case law . . . concluding that multiple address searches, combined with mailings to the found addresses and publication in a newspaper of general publication is normally notice that is 'reasonably calculated' to reach an interested party" (alteration in original) (citation and internal quotation marks omitted)).[9]

    Finally, as the government correctly indicates, see Gov't's Mem. at 8–10, no person or entity—beyond those claimants whose untimely claim the Court has stricken—has filed a claim to or sought to defend the defendant funds in this Court.  Moreover, the time for filing a claim has now expired.  See Supp. R. G(5)(a)(ii)(A)–(B) (providing that a "claim must be filed: (A) by the time stated in a direct notice sent under [Supplemental] Rule G(4)(b); [or] (B) if notice was published but direct notice was not sent, . . . no later than [sixty] days after the first day of

---

[9] The Court also finds for several reasons that the government's notices also satisfied the remaining requirements of Supplemental Rule G(4)(b).  First, the notices satisfy Supplemental Rule G(4)(b)(i)'s requirement that such notices be sent within sixty days after the government posted notice of this action on an official government forfeiture website.  See Publication Decl., Attach. 1 (Notice of Forfeiture Action); see also Supp. R. G(4)(b)(i) (requiring that the notices be sent "before the end of the time for filing a claim under [Supplemental] Rule G(5)(a)(ii)(B)"); Supp. R. G(5)(a)(ii)(B) (requiring that claims be filed "no later than [sixty] days after the first day of publication on an official internet government forfeiture site").  Additionally, the notices satisfy Supplemental Rule G(4)(b)(ii), which provides that "[t]he notice[s] must state: (A) the date when the notice is sent; (B) a deadline for filing a claim, at least [thirty-five] days after the notice is sent; (C) that an answer or a motion under Rule 12 must be filed no later than [twenty-one] days after filing the claim; and (D) the name of the government attorney to be served with the claim and answer."  Supp. R. G(4)(b)(ii); see Publication Decl., Attach. 1 (Notice of Forfeiture Action).

16

publication on an official internet government forfeiture site"). For all of these reasons, the Court concludes that the government has satisfied the applicable procedural prerequisites for forfeiture of the defendant funds under Supplemental Rule G and that the Clerk of the Court's entry of a default against the defendant funds was appropriate.

### 2. Forfeiture Under 18 U.S.C. § 981(a)(1)(A) and (C)

As already explained, "[a] defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." Adkins, 180 F. Supp. 2d at 17. Having concluded that the Clerk of the Court's entry of the default against the defendant funds was proper, the Court therefore deems the allegations in the government's Complaint admitted. Upon reviewing the allegations in the government's Complaint, the Court concludes that they establish the facts necessary to warrant forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

The Court begins its analysis with § 981(a)(1)(C), which provides that "property that 'constitutes or is derived from proceeds traceable to' violations of . . . [section 206 of] the [Act] is subject to forfeiture." In re 650 Fifth Ave. & Related Props., 830 F.3d 66, 87 (2d Cir. 2016) (first quoting 18 U.S.C. § 981(a)(1)(C); then citing id. § 1956(c)(7)(D); then citing 50 U.S.C. § 1705 (2012)). Section 206 of the Act makes it "unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under" the Act. 50 U.S.C. § 1705(a). Relevant here, the Global Terrorism Sanctions Regulations, 31 C.F.R. pt. 594, make it "illegal [under the Act] for any [United States] person or entity to engage in any transaction not only with a designated SDGT, but also with any undesignated third-party entity or person acting on behalf of the designated SDGT without first obtaining a license from OFAC." Compl. ¶ 20; see 31 C.F.R. pt. 594.701.

17

Here, the government alleges that the defendant funds "constitute or are derived from proceeds traceable to specified unlawful activity, specifically violations of [the Act,]" id. ¶ 56, and "a conspiracy to commit specified unlawful activity, specifically a conspiracy to violate [the Act,]" id. ¶ 61.  In particular, the government alleges that the defendant funds were involved in attempted wire transfers without the existence of "the proper license from [the] OFAC to conduct business for the benefit of [SDGTs] [ ] Tajideen or Ovlas Trading SA."  Id. ¶¶ 40–43.  These allegations and the various other factual allegations supporting them, including that the multiple and closely subsequent wire transfers involved nonexempt "[c]orrespondent banking in the United States[,]" see id. ¶ 36, are sufficient to establish that the defendant funds "constitute[] or [were] derived from proceeds traceable to a violation of" the Act, and thus, are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

Additionally, the government's allegations establish that the defendant funds are subject to forfeiture under § 981(a)(1)(A), because they are derived from proceeds traceable to violations of 18 U.S.C. § 1956.  See id. § 981(a)(1)(A).  Section 1956 makes it unlawful to "transport[], transmit[], or transfer[] . . . a monetary instrument or funds . . . to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity[,]" id. § 1956(a)(2)(A), or to conspire to do so, see id. § 1956(h).  As already discussed, the government alleges that the defendant funds constitute or are derived from proceeds traceable to violations of the Act, see Compl. ¶ 66, which are "specified unlawful activit[ies]" under § 1956, see 18 U.S.C. § 1956(c)(7)(D) (defining "specified unlawful activity" to include offenses under "section 206 . . . of the [the Act]").  Thus, the government's well-pleaded allegations in its Complaint are sufficient to establish that the defendant funds are

derived from proceeds traceable to a violation of § 1956(a)(2)(A), and consequently, § 981(a)(1)(A) provides an additional ground for the forfeiture of the defendant funds.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that the government has demonstrated that the procedural prerequisites for civil forfeiture of the defendant funds have been satisfied, that the defendant funds are subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(A) and (C), and that the government is entitled to the seized funds it seeks to have forfeited.  Therefore, the Court grants the government's motion for default judgment and orders that the defendant funds be forfeited to the government.

**SO ORDERED** this 3rd day of June, 2021. [10]

REGGIE B. WALTON<br>United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.